[No. C061510. Third Dist. Apr. 15, 2011.]

DONNA LEEK et al., Plaintiffs and Appellants, v.
JAY COOPER, Defendant and Respondent.

[No. C063152. Third Dist. Apr. 15, 2011.]

LARRY LEONARDO, Plaintiff and Appellant, v.
JAY COOPER, Defendant and Respondent.

## COUNSEL

Kevin W. Harris and Martin F. Jennings, Jr., for Plaintiffs and Appellants.

Costa Law Firm, Daniel P. Costa, Doreen R. Altman; Wright & Britton and John A. Britton for Defendant and Respondent.

## OPINION

**BLEASE, J.**—This is a pleading case masquerading as a summary judgment case. Employees of a corporate-owned car dealership sued the corporation and its sole shareholder, alleging causes of action for age discrimination and violation of California's Moore-Brown-Roberti Family Rights Act (Gov. Code, § 12945.1 et seq.; hereafter Family Rights Act). The trial court granted the shareholder's motions for summary judgment on the ground that only the corporation as the employer could be held liable for discrimination, and an alter ego theory was not pleaded in the complaint. The court further granted the shareholder's motion for attorney fees and costs pursuant to Government Code section 12965, subdivision (b).

Plaintiffs' claims regarding the merits of the summary judgment motion are twofold. They do not deny that only an employer may be liable to an

employee for discrimination under the California Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.) or for violation of the Family Rights Act. They claim that Jay Cooper was an employer under the statutes, the proper test for determining who is an employer being the degree to which that person controls the employee. They also claim that Cooper is liable for the wrongdoing of the corporate employer under an alter ego theory.

The alter ego theory was tendered in a motion to amend their pleading to assert it as a ground of Cooper's liability. Plaintiffs did not make an offer of proof in support of the motion. Rather, they offered the facts tendered in opposition to the motion for summary judgment as grounds justifying an amendment. The trial court denied the request on the ground the facts, if true, did not establish Cooper's liability as an alter ego of the corporation.

We shall conclude that Cooper's control over the employees is not the proper test to determine whether he was the actual employer. The essence of the alter ego doctrine is not that the individual shareholder becomes the corporation, but that the individual shareholder is liable for the actions of the corporation. (*Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, 300 [216 Cal.Rptr. 443, 702 P.2d 601].) The proper method for determining whether the sole shareholder of a corporate employer is liable for the wrongdoing employer/corporation is by the application of an alter ego theory. We agree with the trial court that plaintiffs did not adequately plead an alter ego theory of recovery in their complaint. This being the case, defendant Cooper was under no duty to negate an alter ego claim.

Plaintiffs attempted to raise the issue of alter ego in their opposition to the summary judgment motion. Because the facts they claimed to be undisputed were insufficient to state a claim of alter ego, it is not reasonably possible that they could amend their complaints to allege the theory, and the trial court did not abuse its discretion in denying leave to amend.

We shall reverse the portion of the judgment awarding attorney fees to Cooper because we do not find the action unreasonable, frivolous, meritless or vexatious. Likewise, we deny Cooper's motions for sanctions on appeal because we do not find the appeal frivolous.

## FACTUAL AND PROCEDURAL BACKGROUND

We deal with two separate actions, which we have consolidated for purposes of oral argument and for this opinion. In the first action, plaintiffs Donna Leek, John Borden, and Cindy Buschmann alleged that they were

employed by Auburn Honda, a California corporation, and Cooper.[1] In the second action Larry Leonardo also alleged that he was employed by Auburn Honda and Cooper. All plaintiffs alleged that Cooper is the sole owner of Auburn Honda, owning all of its stock and making all of its business decisions.

At the time of their terminations, Leek was 49, Buschmann was 51, Borden was 66, and Leonardo was 56. All allege that they were replaced by substantially younger employees, and that Cooper told Leonardo he planned to get rid of older employees in order to reduce payroll expenses. Both actions alleged age discrimination pursuant to FEHA. (Gov. Code, § 12900 et seq.)

Leonardo's complaint additionally contained a cause of action for violation of California's Family Rights Act. (Gov. Code, § 12945.1 et seq.) The factual basis for this claim was that just prior to his termination Leonardo informed Cooper he needed to take leave to care for his terminally ill mother, that Cooper became enraged at the request, and that he informed Leonardo he had a business to run, which did not include taking care of old sick people.

Cooper filed an answer to each complaint that consisted of a general denial and numerous affirmative defenses, including the defense that he had no employer-employee relationship with plaintiffs.

Cooper then filed a motion for summary judgment in both actions. The basis for the motions for summary judgment was that Government Code section 12940, barring discrimination against employees, limits liability for discrimination to the employer, not to management personnel. With respect to the Leonardo complaint, Cooper argued the Family Rights Act and FEHA contain the same definition of an employer. Thus, he asserted the same argument with respect to his claim based on the Family Rights Act.

Plaintiffs responded to the summary judgment motion, arguing that Cooper was the alter ego of Auburn Honda on the apparent theory that Cooper was their employer. They pointed to evidence that Cooper was the president of Auburn Honda, and that there were no directors of the corporation, that Cooper "individually" fired plaintiffs, that Cooper "individually" makes all policy, procedure, and management decisions for Auburn Honda, that Cooper "individually" owns the land on which the dealership is located, and that he raises the rent as he sees fit.

The trial court granted summary judgment as to both complaints. It ruled that pursuant to *Reno v. Baird* (1998) 18 Cal.4th 640 [76 Cal.Rptr.2d 499,

---

[1] The actual name of the corporation is Auburn Associates, Inc. Auburn Honda is a "doing business as" name. The parties nevertheless refer to the corporation as Auburn Honda, as do we.

957 P.2d 1333] (*Reno*), an individual manager or supervisor could not be held liable for discrimination under the FEHA. It further ruled that plaintiffs had not alleged alter ego liability in their complaint, thus the evidence proffered to that effect was unavailing. The court denied plaintiffs' request to amend the complaint to allege alter ego liability, finding that the evidence proffered was insufficient to establish alter ego liability.

The trial court granted Cooper's motions for attorney fees pursuant to Government Code section 12965, subdivision (b), providing that the court may, in its discretion, award reasonable attorney fees and costs to the prevailing party. Cooper was awarded a total of $49,747 in attorney fees.

## DISCUSSION

### I

### Employer Liability

In *Reno* the California Supreme Court held that only the employer, not individual supervisory employees, may be held personally liable under FEHA for discriminatory hiring, firing, and personnel practices. (*Reno, supra,* 18 Cal.4th at p. 645.) By contrast, individuals may be held liable under FEHA for harassment. (*Reno*, at p. 645.) In so holding, the Supreme Court agreed with an earlier Court of Appeal decision, *Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55 [53 Cal.Rptr.2d 741] (*Janken*), which reasoned that discrimination claims arise "out of the performance of necessary personnel management duties." (*Id.* at p. 63.) By contrast, harassment is not conduct necessary to personnel management, but is instead "conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives." (*Ibid.*)

It is thus settled that only an employer may be liable for discrimination under FEHA, and Leonardo does not argue that anyone other than an employer may be liable for violation of the Family Rights Act.

Notwithstanding plaintiffs' agreement with the conclusion that liability under the statutes in question extends only to employers, they argue that the policy reasons cited in *Reno* and *Janken* are inapplicable here. Leonardo argues a distinction must be made because Cooper is the sole shareholder of the corporate employer and makes all of its management decisions. Specifically, he claims that this situation does not result in any conflict of interest between an individual supervisory employee and the employer that would have a chilling effect on management decisions.

*Janken* and *Reno* expressed the opinion that imposing personal liability on individual supervisory employees would impair the exercise of supervisory judgment, creating conflicts of interest and chilling effective management. (*Janken, supra*, 46 Cal.App.4th at p. 72; *Reno, supra*, 18 Cal.4th at pp. 651–652.) They reasoned that holding supervisory employees liable "would coerce the supervisory employee not to make the optimum lawful decision for the employer. Instead, the supervisory employee would be pressed to make whatever decision was least likely to lead to a claim of discrimination against the supervisory employee personally, or likely to lead only to that discrimination claim which could most easily be defended. The employee would thus be placed in the position of choosing between loyalty to the employer's lawful interests at severe risk to his or her own interests and family, versus abandoning the employer's lawful interests and protecting his or her own personal interests." (*Janken, supra*, 46 Cal.App.4th at p. 74, quoted in *Reno, supra*, 18 Cal.4th at p. 653.)

We agree that these policy reasons are not applicable in this case. Nevertheless, the Supreme Court has made clear that liability for discrimination extends only to the employer, and not to individual employees. Plaintiffs make no argument that liability rests with anyone but the employer. Instead, they argue that Cooper was in fact the employer because of the control he exercised over them. They point to tests other courts have employed to determine whether a person is an employee or independent contractor, whether a shareholder in a professional corporation is an employee for purposes of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 et seq.), or whether two corporations should be considered a single employer for title VII of the Civil Rights Act of 1964 (Pub.L. No. 88-352, July 2, 1964, 78 Stat. 241) purposes, and argue that those methods are appropriate for determining when a sole shareholder of an employer corporation may be considered an employer.

We disagree. A determination that a person is the alter ego of a corporation does not make the alter ego an employer. Rather it makes the alter ego liable for the obligations of the corporation. In this instance, where a third party seeks to hold the sole shareholder liable for the wrongdoing of the corporation, an alter ego theory is the appropriate way to determine whether the shareholder is liable. As demonstrated below, the cases cited by plaintiffs for determining who is an employer for other purposes are distinguishable.

Citing *Vernon v. State of California* (2004) 116 Cal.App.4th 114, 124 [10 Cal.Rptr.3d 121], plaintiffs argue that Cooper is an employer under the "totality of the circumstances" test. The goal of the "totality of the circumstances" test is to determine whether a worker is an employee or an independent contractor. (See *Lambertsen v. Utah Dept. of Corrections*

(10th Cir. 1996) 79 F.3d 1024, 1028, fn. 1, cited in *Vernon v. State of California, supra*, 116 Cal.App.4th 114.) Many of the factors to be considered simply make no sense in the context of this case.

Thus, determining whether plaintiffs are paid a salary or other employment benefits, where the work is performed, the skill required of the work, the extent to which the work is done under the direction of a supervisor, whether the work is part of defendant's regular business operations, the duration of the relationship of the parties, and the duration of plaintiffs' employment, does not provide any meaningful assistance in resolving whether Cooper as an individual was plaintiffs' employer. (See *Vernon v. State of California, supra*, 116 Cal.App.4th at p. 125.)

Likewise, the test used by the United States Supreme Court to determine whether a shareholder in a professional corporation was an employee for purposes of the Americans with Disabilities Act of 1990 is not helpful in resolving the question of a sole shareholder's liability as an employer. That test, taken from the Equal Employment Opportunities Commission guidelines, considers the following factors:

" 'Whether the organization can hire or fire the individual [shareholder] or set the rules and regulations of the individual's work

" 'Whether and, if so, to what extent the organization supervises the individual's work

" 'Whether the individual [shareholder] reports to someone higher· in the organization

" 'Whether and, if so, to what extent the individual [shareholder] is able to influence the organization

" 'Whether the parties intended that the individual [shareholder] be an employee, as expressed in written agreements or contracts

" 'Whether the individual [shareholder] shares in the profits, losses, and liabilities of the organization.' EEOC Compliance Manual § 605:0009." (*Clackamas Gastroenterology Associates, P. C. v. Wells* (2003) 538 U.S. 440, 449–450 [155 L.Ed.2d 615, 626, 123 S.Ct. 1673], fn. omitted.)

Whether the corporation can hire or fire a shareholder is logically related to the question of whether the shareholder is an employee, but not to the question whether the corporation and the shareholder can both be considered employers. Again, this is a determination best made by the alter ego doctrine.

■ Leonardo also asserts the "integrated enterprise test" is relevant. This is a test federal courts have developed to determine whether two corporations should be considered a single employer for title VII purposes. (*Laird v. Capital Cities/ABC, Inc.* (1998) 68 Cal.App.4th 727, 737 [80 Cal.Rptr.2d 454].) It looks at the two corporations to determine whether there is an interrelation of operations, common management, centralized control of labor relations, and common ownership or financial control. (*Ibid.*) Again, these factors have little relevance when the issue is whether a sole shareholder should be held liable for the corporation's wrongdoing.

■ "Ordinarily, a corporation is regarded as a legal entity, separate and distinct from its stockholders, officers and directors, with separate and distinct liabilities and obligations. [Citations.]" (*Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 538 [99 Cal.Rptr.2d 824] (*Sonora Diamond*).) "[T]he corporate form will be disregarded only in narrowly defined circumstances and only when the ends of justice so require." (*Mesler v. Bragg Management Co., supra*, 39 Cal.3d at p. 301.) Before a corporation's obligations can be recognized as those of a particular person, the requisite unity of interest and inequitable result must be shown. (*Arnold v. Browne* (1972) 27 Cal.App.3d 386, 394 [103 Cal.Rptr. 775], disapproved on other grounds in *Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 129 [158 Cal.Rptr. 1, 599 P.2d 83].) These factors comprise the elements that must be present for liability as an alter ego.

The various tests asserted by plaintiffs are useful for determining who may be considered an employer or employee in other contexts, but the test for determining whether Cooper may be held to answer for the wrongdoing of the corporation is the alter ego doctrine.

## II

### Burdens of the Parties on Summary Judgment

A defendant moving for summary judgment bears the burden of persuasion that one or more elements of the cause of action at issue cannot be established, or that there is a complete defense to the cause of action. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493].) The moving party bears the initial burden of making a prima facie showing of the nonexistence of a triable issue of material fact, and only if the moving party carries the initial burden does the burden shift to the opposing party to produce a prima facie showing of the existence of a triable issue of material fact. (*Ibid.*)

We must determine whether defendant's showing was sufficient to entitle him to a summary judgment. Defendant's showing on summary judgment

was that plaintiffs could not prevail on their claims against him because only an employer may be liable for discrimination or violation of the Family Rights Act. Since Auburn Honda, the corporation, was the employer, there could be no liability attributed to defendant Cooper.

Plaintiffs' response was that Cooper was liable under an alter ego theory, or because he was the actual employer by virtue of his control over the employees of Auburn Honda. They argue defendant's showing was insufficient because there were triable issues of fact as to his liability as an alter ego. Thus, before we can determine whether defendant's showing was sufficient, we must determine whether the complaint adequately alleged that Cooper was liable to plaintiffs on an alter ego theory. Only if the allegations were adequate to apprise Cooper that he was being held accountable as an alter ego, was it necessary for him to produce evidence that he could not be held liable under such theory.

■ " 'The function of the pleadings in a motion for summary judgment is to delimit the scope of the issues . . . .' [Citations.]" (*FPI Development, Inc. v. Nakashima* (1991) 231 Cal.App.3d 367, 381 [282 Cal.Rptr. 508], quoting *Orange County Air Pollution Control Dist. v. Superior Court* (1972) 27 Cal.App.3d 109, 113 [103 Cal.Rptr. 410].) The pleadings are the "outer measure of materiality in a summary judgment proceeding." (*FPI Development, Inc.*, at p. 381.) The summary judgment procedure *"presupposes* that the pleadings are adequate to put in issue a cause of action or defense thereto. [Citation.] However a pleading may be defective in failing to allege an element of a cause of action or in failing to intelligibly identify a defense thereto. In such a case, the moving party need not address a missing element or, obviously, respond to assertions which are unintelligible or make out no recognizable legal claim. The summary judgment proceeding is thereby necessarily transmuted into a test of the pleadings and the summary judgment motion into a motion for judgment on the pleadings. In these circumstances it has been said that a defendant's 'motion for summary judgment necessarily includes a test of the sufficiency of the complaint and as such is in legal effect a motion for judgment on the pleadings.' [Citation.]" (*Id.* at p. 382.)

In this case, plaintiffs do not contend that anyone other than an employer is liable for employment discrimination under FEHA or for violation of the Family Rights Act. In fact, plaintiffs pleaded that Cooper was their employer.[2] Defendant's summary judgment motion adduced facts showing that plaintiffs were employed by Auburn Honda, rather than Cooper. The question

---

[2] In the previous part, we explained that plaintiffs' theory that Cooper was their employer is wrong. Plaintiffs' alter ego theory seeks to show not that Cooper was the employer, but that as the alter ego of the employer, he should be liable for its wrongdoing.

is whether the complaint contained sufficient factual allegations to inform defendant that plaintiffs were seeking relief on the basis of Cooper's liability as an alter ego. We conclude it did not.

■ Although California courts take a liberal view of inartfully drawn complaints, "[i]t remains essential . . . that a complaint set forth the actionable facts relied upon with sufficient precision to inform the defendant of what plaintiff is complaining, and what remedies are being sought." (*Signal Hill Aviation Co. v. Stroppe* (1979) 96 Cal.App.3d 627, 636 [158 Cal.Rptr. 178].) Fairness dictates that a complaint give the defendant sufficient notice of the cause of action stated to be able to prepare the case. (*Bradley v. Hartford Acc. & Indem. Co.* (1973) 30 Cal.App.3d 818, 825 [106 Cal.Rptr. 718], disapproved on another point in *Silberg v. Anderson* (1990) 50 Cal.3d 205, 212–213 [266 Cal.Rptr. 638, 786 P.2d 365].)

■ *Auer v. Frank* (1964) 227 Cal.App.2d 396, 403 [38 Cal.Rptr. 684] (*Auer*), noted a split of authority whether the alter ego doctrine must be pleaded in the complaint. Some cases say that it must be, while others state that if a defendant is charged with liability, the denial of liability is sufficient to place the alter ego doctrine at issue. (*Ibid.*) *Auer* sided with those cases holding that the alter ego theory need not be pleaded in the complaint. (*Ibid.*)

Having reviewed those cases holding that the alter ego doctrine need not be pleaded in the complaint, we conclude they were presented in a different posture than the case before us, and are not compelling authority in this case. In *Auer, supra*, 227 Cal.App.2d 396, the complaint lacked alter ego allegations yet the case went to trial, and the plaintiff's counsel informed the court during the opening statement that the plaintiffs intended to rely on an alter ego theory, that they had not been aware of such a theory when the complaint was filed, but had been made aware of the issue after taking depositions. (*Id.* at pp. 401–402.) The trial court allowed introduction of the alter ego evidence.

Likewise in *Pan Pacific Sash & Door Co. v. Greendale Park, Inc.* (1958) 166 Cal.App.2d 652, 654–655 [333 P.2d 802], cited in *Auer*, no alter ego allegations appeared in the complaint, but the case went to trial and alter ego evidence was admitted over objection. The court held that the charge of liability and denial was sufficient to authorize the reception of evidence on the alter ego theory, or that the reception of such evidence was not reversible error. (*Id.* at p. 655.) The court noted that the defendants were apprised in advance of trial that the plaintiff intended to rely on the doctrine, that both defendants (in that case both were corporations) were parties to the action and represented by the same counsel. (*Id.* at p. 656.) The court concluded that "[u]nder these circumstances conceding that the plaintiff's complaint was

deficient in the particular above referred to, it may not be said that defendants were misled to their prejudice by any variance between the pleading and the proof." (*Id.* at p. 657.)

Also in *Gordon v. Aztec Brewing Co.* (1949) 33 Cal.2d 514, 516 [203 P.2d 522], cited by *Auer* the appeal was after judgment upon a jury verdict. Although the complaint did not allege alter ego, alter ego evidence was admitted and an alter ego instruction was given. (*Id.* at p. 521.) In response to the argument that no alter ego relationship was pleaded, therefore it was not before the trial court, the Court of Appeal reasoned that "even if the pleadings were to be considered deficient in this respect, it is clear that the defendant has not been misled to its prejudice by any variance between pleadings and proof. . . . From the beginning of the proceedings it was prepared to maintain, and did maintain throughout the trial, that the liabilities of the partnership could not be fastened upon the corporation." (*Id.* at p. 523, citation omitted.)

Finally, in *Marr v. Postal Union Life Ins. Co.* (1940) 40 Cal.App.2d 673, 678 [105 P.2d 649], cited by *Auer*, the case was tried to a jury, and alter ego evidence was presented. The court held that the appellant had not been surprised or misled by presentation of the alter ego theory at trial. "Not having actually misled appellant to its prejudice in presenting its defense, the variance, if any, between the allegations of the complaint and the proof cannot be considered as a material variance." (*Id.* at p. 681.)

 However, when the court is asked to take some action upon an alter ego theory at the pleadings stage, more is required than was pleaded here. For example, in *Norins Realty Co. v. Consol. A. & T. G. Co.* (1947) 80 Cal.App.2d 879 [182 P.2d 593], the action against the corporation was filed in Los Angeles County, where the individual defendants resided. (*Id.* at pp. 879–880.) The defendants' motion for change of venue to San Bernardino County, where the corporation's principal place of business was located, was granted. The Court of Appeal affirmed, concluding that the action was not triable in Los Angeles County because although the individuals were the named defendants, no facts were alleged from which alter ego liability could be inferred. (*Id.* at p. 883.) "The allegation that a corporation is the *alter ego* of the individual stockholders is insufficient to justify the court in disregarding the corporate entity in the absence of allegations of facts from which it appears that justice cannot otherwise be accomplished." (*Ibid.*)

In *Sheard v. Superior Court* (1974) 40 Cal.App.3d 207 [114 Cal.Rptr. 743], the issue was whether service on the individual, out-of-state stockholder defendants should be quashed because the complaint did not allege sufficient facts to support jurisdiction over them. The court found that neither the complaint nor the declaration in opposition to the motion to quash contained

sufficient allegations to support the two requirements (unity of interest and inequitable result) to the application of the alter ego theory. (*Id.* at pp. 211–212.)

Here, even though the case arises on a motion for summary judgment, it is in fact a pleading case because the pleadings delimit the scope of the issues in a motion for summary judgment, and the question on appeal from this judgment is whether the alter ego theory was sufficiently pleaded to put it at issue for purposes of the summary judgment motion. (See *FPI Development, Inc. v. Nakashima, supra,* 231 Cal.App.3d at p. 381.)

A complaint must set forth the facts with sufficient precision to put the defendant on notice about what the plaintiff is complaining and what remedies are being sought. (*Signal Hill Aviation Co. v. Stroppe, supra,* 96 Cal.App.3d at p. 636.) To recover on an alter ego theory, a plaintiff need not use the words "alter ego," but must allege sufficient facts to show a unity of interest and ownership, and an unjust result if the corporation is treated as the sole actor. (*Vasey v. California Dance Co.* (1977) 70 Cal.App.3d 742, 749 [139 Cal.Rptr. 72].) An allegation that a person owns all of the corporate stock and makes all of the management decisions is insufficient to cause the court to disregard the corporate entity. (*Meadows v. Emett & Chandler* (1950) 99 Cal.App.2d 496, 499 [222 P.2d 145].)

Here, the pertinent allegations of the complaints were (1) that the plaintiffs were employed by Auburn Honda and Jay Cooper; (2) that Auburn Honda is a corporation; (3) that "Defendant Cooper is the sole owner of AUBURN HONDA, owning all of its stock and making all of its business decisions personally"; and (4) that all defendants were "the agents, servants and employees of their co-defendants, and in doing the things hereinafter alleged were acting within the scope and authority as such agents, servants and employees and with the permission and consent of their co-defendants. All of said acts of each of the Defendants were authorized by or ratified by their co-defendants."

These allegations neither specifically alleged alter ego liability, nor alleged facts showing a unity of interest and inequitable result from treatment of the corporation as the sole actor. Furthermore, although plaintiffs alleged Cooper was the employer, the complaint contains no allegations that he should be held liable for the corporation's wrongdoing. The essence of the alter ego doctrine is not that the individual shareholder becomes the corporation, but that the individual shareholder is liable for the actions of the corporation. (*Mesler v. Bragg Management Co., supra,* 39 Cal.3d at p. 300.) For all other purposes, the separate corporate existence remains. (*Id.* at p. 301.)

■ Because the alter ego theory was not adequately pleaded, Cooper had no burden to show that plaintiffs' alter ego claim could not be established. "Where a complaint does not state a cognizable claim, . . . a defendant has no obligation to present evidence to negate a legally inadequate claim." (*Hansra v. Superior Court* (1992) 7 Cal.App.4th 630, 638–639 [9 Cal.Rptr.2d 216].) Cooper therefore had no obligation to adduce evidence to negate an alter ego theory in his motion for summary judgment, and the trial court properly granted the motion.

## III

### Motion to Amend Complaint

Plaintiffs requested leave to amend their complaints to add alter ego allegations at the hearing on the summary judgment motions. They did not make an offer of proof in support of the request. Rather, they offered the facts tendered in opposition to the motion for summary judgment as grounds justifying an amendment. The trial court denied the motion of Leek, Borden, and Buschmann to amend on the ground that even if the facts adduced in plaintiffs' opposition to the summary judgment motion were true, they would not establish alter ego liability. The Leonardo court did not rule on the motion to amend. Plaintiffs argue the trial court should have allowed amendment of the complaints.

■ " '[A] *defendant's* motion for summary judgment "necessarily includes a test of the sufficiency of the complaint . . . ." Motions for summary judgment in such situations [(where the complaint does not state a cognizable claim)] have otherwise been allowed as being in legal effect motions for judgment on the pleadings. [Citations.]' " (*Hansra v. Superior Court, supra,* 7 Cal.App.4th at p. 639.) Thus, in determining whether the trial court erred in denying the motions to amend the complaint, we treat the matter as if it arose on a motion for judgment on the pleadings.

The standard of review for a motion for judgment on the pleadings is the same as that for a demurrer. (*Ellerbee v. County of Los Angeles* (2010) 187 Cal.App.4th 1206, 1213 [114 Cal.Rptr.3d 756].) When the trial court has sustained a demurrer without leave to amend, we must decide whether there is a reasonable possibility that the defect can be cured by amendment. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) If it can be, the trial court has abused its discretion and we reverse. It is the plaintiff's burden to prove the reasonable possibility of curing the defect by amendment. (*Ibid.*)

In this case we may look to the papers plaintiffs adduced in opposition to the summary judgment motion to determine whether there is a "reasonable

possibility" they will be able to amend to state a claim against Cooper on an alter ego theory. "[W]here the parties have had sufficient opportunity adequately to develop their factual cases through discovery and the defendant has made a sufficient showing that the plaintiff's action has no merit, in order to avert summary judgment the plaintiff must produce *substantial* responsive evidence sufficient to establish the existence of a triable issue of material fact on the issues raised by the plaintiff's causes of action." (*Eisenberg v. Alameda Newspapers, Inc.* (1999) 74 Cal.App.4th 1359, 1376 [88 Cal.Rptr.2d 802].) Plaintiffs made no offer of proof. As noted, they sought to rely on the facts tendered in opposition to the motion for summary judgment. We may assume that plaintiffs understood their burden in this regard and that they proffered all the facts made available to them through discovery to show the existence of an alter ego claim.

 To succeed on their alter ego claim, plaintiffs must be able to show (1) such a unity of interest and ownership between the corporation and its equitable owner that no separation actually exists, and (2) an inequitable result if the acts in question are treated as those of the corporation alone. (*Sonora Diamond, supra,* 83 Cal.App.4th at p. 538.)

 Several factors are to be considered in applying the doctrine; among them are: " '[c]ommingling of funds and other assets, failure to segregate funds of the separate entities, and the unauthorized diversion of corporate funds or assets to other than corporate uses . . . ; . . . the treatment by an individual of the assets of the corporation as his own . . . ; . . . the failure to obtain authority to issue stock or to subscribe to or issue the same . . . ; . . . the holding out by an individual that he is personally liable for the debts of the corporation . . . ; the failure to maintain minutes or adequate corporate records . . . ; . . . sole ownership of all of the stock in a corporation by one individual or the members of a family . . . ; . . . the failure to adequately capitalize a corporation; the total absence of corporate assets, and undercapitalization . . . ; . . . the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation . . . ; . . . the concealment and misrepresentation of the identity of the responsible ownership, management and financial interest, or concealment of personal business activities . . . ; . . . the disregard of legal formalities and the failure to maintain arm's length relationships among related entities . . . ; . . . the use of the corporate entity to procure labor, services or merchandise for another person or entity . . . ; . . . the diversion of assets from a corporation by or to a stockholder or other person or entity, to the detriment of creditors, or the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another . . . ; . . . the contracting with another with intent to avoid performance by use of a corporate entity as a shield against personal liability, or the use of a corporation as a subterfuge of illegal transactions . . . ; . . . and

the formation and use of a corporation to transfer to it the existing liability of another person or entity.' . . . [¶] This long list of factors is not exhaustive. The enumerated factors may be considered '[a]mong' others 'under the particular circumstances of each case.' " (*Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft* (1999) 69 Cal.App.4th 223, 249–250 [81 Cal.Rptr.2d 425], citation omitted, quoting *Associated Vendors, Inc. v. Oakland Meat Co.* (1962) 210 Cal.App.2d 825, 838–840 [26 Cal.Rptr. 806].)

Plaintiffs have proffered evidence to support only two of the above factors: that Cooper was the sole owner of all of the stock in the corporation, and that corporate formalities were disregarded.[3] Nevertheless, no single factor is determinative and the result depends on the circumstances of each particular case. (*Zoran Corp. v. Chen* (2010) 185 Cal.App.4th 799, 812 [110 Cal.Rptr.3d 597]; *Baize v. Eastridge Companies, LLC* (2006) 142 Cal.App.4th 293, 302 [47 Cal.Rptr.3d 763].) Whether a party is liable under an alter ego theory is a question of fact. (*Zoran, supra*, at p. 811.)

While plaintiffs arguably adduced sufficient facts to show a unity of interest and ownership, in order to recover under a theory of alter ego liability they also would have to show an inequitable result if Cooper and the corporation are not treated as one and the same. Difficulty in enforcing a judgment does not alone satisfy this element. (*Sonora Diamond, supra*, 83 Cal.App.4th at p. 539.) There also must be some conduct amounting to bad faith that makes it inequitable for Cooper to hide behind the corporate form. (*Ibid.*)

Plaintiffs have proffered no evidence to support this element. All they offer on appeal is their argument that Cooper might raid the corporate coffers, based upon the fact that he raised the dealership's rent substantially between 2004 and 2006. There is no evidence regarding the corporation's financial situation, or the amount or nature of corporate assets, or whether the corporation is adequately capitalized. There is no evidence the corporation was a mere sham or shell. There is no evidence Cooper has diverted assets from the corporation to avoid paying creditors. In short, there is nothing to indicate that plaintiffs, if successful against the corporation, will not be able to collect on any judgment against the corporation. Absent such evidence, plaintiffs cannot show that the result will be inequitable, and have not stated the second element of an alter ego claim. The trial court acted within its discretion when it denied the motion to amend.

A claim based upon an alter ego theory is not itself a claim for substantive relief. (*Hennessey's Tavern, Inc. v. American Air Filter Co.* (1988)

---

[3] Deanna Keck, the corporate secretary, did not recall participating in any corporate meetings.

204 Cal.App.3d 1351, 1359 [251 Cal.Rptr. 859].) It is a procedural device by which courts will disregard the corporate entity in order to hold the alter ego individual liable on the obligations of the corporation. (*Ibid.*) Because it is not a substantive claim that has been decided, we do not necessarily rule out the possibility that plaintiffs could still recover from Cooper individually if they obtain a judgment that the corporation is unable to satisfy.

Under some circumstances a judgment against a corporation may be amended to add a nonparty alter ego as a judgment debtor. (*Hall, Goodhue, Haisley & Barker, Inc. v. Marconi Conf. Center Bd.* (1996) 41 Cal.App.4th 1551, 1555 [49 Cal.Rptr.2d 286]; Code Civ. Proc., § 187.) "This is an equitable procedure based on the theory that the court is not amending the judgment to add a new defendant but is merely inserting the correct name of the real defendant." (*NEC Electronics Inc. v. Hurt* (1989) 208 Cal.App.3d 772, 778 [256 Cal.Rptr. 441].) It is also possible for a party to bring a wholly separate action against the individual to enforce a prior judgment against the corporation on an alter ego theory. (*Brenelli Amedeo, S.P.A. v. Bakara Furniture, Inc.* (1994) 29 Cal.App.4th 1828, 1840 [35 Cal.Rptr.2d 348].)

IV

Attorney Fees

The trial court awarded attorney fees to defendant in both actions. Government Code section 12965, subdivision (b) authorizes an award of reasonable attorney fees and costs to the prevailing party in an action brought under FEHA. The section states in pertinent part: "In actions brought under this section, the court, in its discretion, may award to the prevailing party reasonable attorney's fees and costs, including expert witness fees, except where the action is filed by a public agency or a public official, acting in an official capacity."

 Despite this statutory authorization allowing attorney fees to either party that prevails, California courts have interpreted the statute in accordance with the principles developed by federal courts in employment discrimination claims, to the effect that a prevailing defendant in an employment discrimination action cannot recover attorney fees unless the action was unreasonable, frivolous, meritless or vexatious. (*Cummings v. Benco Building Services* (1992) 11 Cal.App.4th 1383, 1386–1387 [15 Cal.Rptr.2d 53] (*Cummings*); *Mangano v. Verity, Inc.* (2008) 167 Cal.App.4th 944, 951 [84 Cal.Rptr.3d 526]; *Rosenman v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro* (2001) 91 Cal.App.4th 859, 865–866 [110 Cal.Rptr.2d 903] (*Rosenman*).) This standard is in contrast to that applied to a prevailing

plaintiff, who should ordinarily recover absent special circumstances rendering such an award unjust. (*Cummings, supra,* 11 Cal.App.4th at p. 1387.)

The policy behind this disparate treatment with respect to the recovery of attorney fees is to " 'make it easier for a plaintiff of limited means to bring a meritorious suit,' " while serving " 'to deter the bringing of lawsuits without foundation,' 'to discourage frivolous suits,' and 'to diminish the likelihood of unjustified suits being brought.' " (*Christiansburg Garment Co. v. EEOC* (1978) 434 U.S. 412, 420 [54 L.Ed.2d 648, 656, 98 S.Ct. 694], fns. omitted (*Christiansburg*).)

■ As explained by the Supreme Court, "In applying these criteria, it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success." (*Christiansburg, supra,* 434 U.S. at pp. 421–422 [54 L.Ed.2d at p. 657].) A meritless case in this context is one that is groundless or without a legal or factual basis. (*Id.* at pp. 420–421 [54 L.Ed.2d at p. 656].)

■ The trial court is required to make written findings when awarding attorney fees to defendants. (*Rosenman, supra,* 91 Cal.App.4th at p. 868 [imposing a "nonwaivable requirement" that trial courts make written findings in every case awarding attorney fees in favor of defendants in FEHA actions].) Such a requirement ensures that fees are awarded only in the rare cases envisioned by *Christiansburg.* (91 Cal.App.4th at p. 868.) If no findings are made, we must reverse and remand absent a determination that no findings supporting the order reasonably could be made. (*Ibid.*)

In the Leonardo case, the trial court's tentative ruling, which apparently became the final ruling, made the finding that Leonardo's complaint against Cooper "was frivolous, unreasonable, and groundless given the rulings in *Reno v. Baird*[, *supra,*] 18 C[al.]4[th] 640 and *Janken v. GM Hughes*[, *supra,*] 46 C[al.]A[pp.]4th 55. Plaintiff's attorney is an admittedly experienced employment attorney who was aware of these cases at the time the complaint was filed." No written findings were made in the other case.

The findings in the Leonardo case relate to the fact that Cooper was not the employer. Leonardo argued below, as all plaintiffs do here, that Cooper was the actual employer based upon the amount of control he exercised over the employees. While we disagree that control of the employees is the proper test, the argument was a legitimate one. Furthermore, the problem with plaintiffs' alter ego theory on summary judgment was not that there was no

legal or factual basis to hold Cooper individually liable. There was, in fact, evidence relevant to some aspects of an alter ego theory, including the fact that Cooper owned all of the corporate stock, was the president of the corporation, and made all of the management decisions. However, there was no evidence of bad faith, or even inequitable result—even assuming alter ego liability was adequately pled.

Also because of such evidence, plaintiffs' argument that their motion to amend should have been granted is not completely groundless. The fact that plaintiffs did not develop sufficient evidence to show that an inequitable result would follow absent the application of the alter ego doctrine does not mean that the action had absolutely no basis in fact.

This case is dissimilar to others that have awarded attorney fees where, for example, the employee lied about having been subjected to discrimination (*Saret-Cook v. Gilbert, Kelly, Crowley & Jennett* (1999) 74 Cal.App.4th 1211 [88 Cal.Rptr.2d 732]), or where the employee had signed a release of all claims, including a FEHA discrimination claim, in exchange for the payment of money (*Linsley v. Twentieth Century Fox Film Corp.* (1999) 75 Cal.App.4th 762 [89 Cal.Rptr.2d 429]), or where there was absolutely no evidence to support the employee's claims of discrimination (*Villanueva v. City of Colton* (2008) 160 Cal.App.4th 1188, 1200 [73 Cal.Rptr.3d 343]).

We therefore conclude that the actions were not completely groundless, frivolous, unreasonable or without foundation. We shall reverse the award of attorney fees against the employees.

V

Motion for Sanctions on Appeal

Cooper has also filed a motion for sanctions for filing a frivolous appeal in each case. He claims attorney fees and costs in the amount of $12,045.48 for the Leek, Borden, and Buschmann appeal. He claims attorney fees and costs in the amount of $9,614.85 for the Leonardo appeal.

Code of Civil Procedure section 907 provides that we may award sanctions if it appears the appeal was frivolous or taken solely for delay. The Supreme Court has defined a frivolous appeal as one that "is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179].) The court stressed that an appeal is not frivolous simply

because it is without merit. (*Ibid.*) Sanctions are intended to prevent "indefensible conduct," but not to deter the "vigorous assertion of clients' rights." (*Id.* at p. 648.)

There is no evidence that this appeal was taken solely to harass or delay. Since we are reversing that portion of the judgment that awarded attorney fees, the appeal is obviously not totally and completely without merit. Furthermore, even as to that portion of the judgment we affirm, the appeal is not one that any reasonable attorney would agree is totally and completely devoid of merit. We therefore deny Cooper's motions for sanctions on appeal.

## DISPOSITION

The portions of the judgments awarding attorney fees to Cooper are reversed. In all other respects the summary judgments are affirmed. Respondent's motions for sanctions on appeal are denied. The parties shall bear their own costs on appeal.

Raye, P. J., and Hull, J., concurred.

A petition for a rehearing was denied May 12, 2011.