Filed 12/18/23  Lopez v. Bellafaire CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| HIPOLITO LOPEZ,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>PHILLIP BELLAFAIRE et al.,<br><br>    Defendants and Respondents. | G061534<br><br>(Super. Ct. No. 30-2018-01006762)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Martha K. Gooding, Judge.  Affirmed.

Employee Justice Legal Group, Kaveh S. Elihu, Matias N. Castro and Samuel Moorhead for Plaintiff and Appellant.

Callahan & Blaine, Edward Susolik and Brett E. Bitzer for Defendants and Respondents.

\*          \*          \*

Plaintiff Hipolito Lopez filed a wrongful termination case against his employer, Saddleback Golf Cars, Inc., pleading causes of action under the Fair Employment and Housing Act (Gov. Code, § 12900 et seq.) (FEHA), and several related claims. During the litigation, he filed Doe amendments to name an individual and several entities as Doe defendants, alleging they were the alter egos of his employer.

Before the first phase of a trifurcated trial, the parties stipulated that two of the parties – Saddleback Electric Cars, Inc., and Bellafaire Enterprises, were the alter egos of Lopez's employer, Saddleback Golf Cars, Inc. After a one-day bench trial, the trial court concluded that Lopez had failed to prove the two remaining Doe defendants – individual Phillip Bellafaire and Semit Properties, LLC – were alter egos of the employer. We agree with the court and find Lopez failed to meet his burden to establish those two defendants were the alter egos of the employer corporation. Accordingly, we affirm the judgment.

I

FACTS

A. *The Parties*

1. *The Original Saddleback Golf Cars, Inc.*

Saddleback Golf Cars, Inc., was founded in the 1970's. Its business was the sale, service, and rental of golf cars. It was a family-owned business, and two of the owners, Mike and Doug Boyd, were friends of defendant Phillip Bellafaire (Bellafaire).

2. *Bellafaire Enterprises, Inc.*

In May 2005, Bellafaire, who had numerous business interests, formed Bellafaire Enterprises, Inc. The purpose of forming Bellafaire Enterprises was to purchase Saddleback Golf Cars once the Boyd family was prepared to sell. Bellafaire was Bellafaire Enterprise's President, CEO, and Operations Manager. Bellafaire

2

Enterprises completed the purchase of Saddleback Golf Cars in June 2005. At that time, the company had approximately 17 to 21 employees. Bellafaire Enterprises assumed Saddleback Golf Cars' commercial lease and opened bank accounts in its name.

### 3. *Bellafaire Enterprises Becomes the Second Saddleback Golf Cars, Inc.*

In September 2005, after the Boyd family dissolved its corporation, Bellafaire Enterprises changed its corporate name to Saddleback Golf Cars, Inc. (Saddleback Golf). Bellafaire Enterprises ceased to exist at that point. Saddleback Golf paid its employees' wages, opened bank accounts, and maintained insurance policies under that name. It maintained a separate set of financial records, engaged the services of an accountant, and used an outside payroll service. It continued to do so until approximately April 2014.

### 4. *Saddleback Electric Cars, Inc.*

In October 2011, Bellafaire incorporated Saddleback Electric Cars, Inc. (Saddleback Electric). Bellafaire was the sole shareholder. Saddleback Electric was created to reflect an expansion into electric cars other than golf cars. Bellafaire's counsel also recommended that he use one corporation for "'factory or fabrication . . . and the other for running the business.'" Ultimately, a manufacturing business did not occur. In 2014, Saddleback Electric took over the business of Saddleback Golf, and Saddleback Golf became "just a corporation only doing nothing" with no employees and no business. Saddleback Electric took over payroll for the employees of Saddleback Golf, maintained a separate bank account, paid taxes, and carried insurance. Saddleback Electric continues to operate Saddleback Golf.

## 5. Semit Properties, LLC

In January 2017, Bellafaire formed Semit Properties, LLC (Semit). Bellafaire is the sole managing member of Semit, which was formed for the purpose of purchasing real property in Laguna Woods. Semit, which obtained its own employer identification number, obtained a loan for approximately $4.1 million to purchase the desired property. Bellafaire testified he used personal funds to pay the down payment on the property and was a personal guarantor for the mortgage. Shortly thereafter, Semit and Saddleback Golf entered into a lease for the property, with a monthly rent of approximately $24,000. Bellafaire signed the lease on behalf of both Semit and Saddleback Golf, which according to Bellafaire's testimony, was operating as a corporation "only doing nothing" by this time frame.

## 6. Phillip Bellafaire

In sum, Bellafaire was the sole shareholder of Bellafaire Enterprises before it became Saddleback Golf. At all times relevant, he was the sole shareholder of Saddleback Golf and Saddleback Electric, and the sole managing member of Semit.

## 7. Hipolito Lopez

Plaintiff Hipolito Lopez began his employment with Saddleback Golf in approximately 2003 as a painter/mechanic. According to the complaint, in 2014, Lopez began to experience vision impairment and was told he required surgery on his right eye. He informed his supervisor of the upcoming surgery in May 2015 and requested medical leave. He returned to work in June, and requested a transfer out of the painting department to allow his eye to heal. In September, his supervisor informed him that if he did not return to the painting department, he would be terminated. He did so, but complained that he was suffering from symptoms in his right eye.

4

In July 2016, the complaint alleged, Lopez lost vision in his right eye. He subsequently requested accommodations including time off. He underwent additional surgery in August 2016 and was placed on leave for 15 days. When Lopez informed his supervisor that he could return, he was told he had been terminated.

*B. The Instant Lawsuit*

In July 2018, Lopez filed a complaint alleging eight causes of action related to his termination, mostly under FEHA. Lopez named Saddleback Golf and Does 1 through 20 as defendants. Discovery proceeded.

On June 25, 2019, Lopez filed four Doe amendments, naming four defendants – Bellafaire (Doe 1), Saddleback Electric (Doe 2), Bellafaire Enterprises (Doe 3), and Semit (Doe 4). Thereafter, the trial court trifurcated the case into phases, with the first phase to determine the issue of alter ego liability only. Before trial, defendants stipulated that Saddleback Golf, Saddleback Electric, and Bellafaire Enterprises were the alter egos of each other. That left the issues of whether Bellafaire and/or Semit (collectively defendants) were alter egos of Saddleback Golf. The one-day trial proceeded on January 5, 2022. We will discuss the evidence presented at trial, to the extent necessary, below.

Two days after the alter ego phase of the trial, the court determined that plaintiff had failed to prove that Bellafaire or Semit were alter egos of Bellafaire Enterprises, Saddleback Golf, or Saddleback Electric. Neither party requested a statement of decision, accordingly, the court's order did not review the evidence, but stated that after considering all the applicable factors, Lopez did not prove the requisite unity of interest between Saddleback Golf and either Bellafaire or Semit. The court issued judgment in favor of Bellafaire and Semit on May 11, 2022. Lopez now appeals.

II

DISCUSSION

A.  *General Principles of Law*

"'In California, two conditions must be met before the alter ego doctrine will be invoked.  First, there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist.  Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone.  [Citations.]  . . .  Alter ego is an extreme remedy, sparingly used.'"  (*Hasso v. Hapke* (2014) 227 Cal.App.4th 107, 155.)

"'Generally, alter ego liability is reserved for the parent-subsidiary relationship.  However, under the single-enterprise rule, liability can be found between sister companies.  The theory has been described as follows:  "'In effect what happens is that the court, for sufficient reason, has determined that though there are two or more personalities, there is but one enterprise; and that this enterprise has been so handled that it should respond, as a whole, for the debts of certain component elements of it.'"'"  (*Greenspan v. LADT LLC* (2010) 191 Cal.App.4th 486, 512.)

B.  *Standard of Review*

While Lopez concedes the general standard of review for a trial court's alter ego findings is substantial evidence, he argues that here, our review should be de novo because "there is no conflict or dispute in the facts."  But most of the cases he cites on this point have nothing to do with alter ego findings.  (*Espejo v. The Copley Press, Inc.* (2017) 13 Cal.App.5th 329, 342-343 [employer versus independent contractor findings]; *Serafini v. Superior Court* (1998) 68 Cal.App.4th 70, 77-78 [personal jurisdiction findings]; *Great-West Life Assurance Co. v. Guarantee Co. of North America* (1988) 205 Cal.App.3d 199, 204 [personal jurisdiction findings]; *Long v. Mishicot*

6

*Modern Dairy, Inc.* (1967) 252 Cal.App.2d 425, 427-428 [also personal jurisdiction findings].) The only case Lopez cites that mentions alter ego findings, *Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 530, only considered alter ego allegations in the context of a motion to quash for lack of personal jurisdiction.

Given the lack of any authority directly on point, and many alter ego cases citing substantial evidence as the correct standard, we conclude our review is for substantial evidence. (See *Toho-Towa Co., Ltd. v. Morgan Creek Productions, Inc.* (2013) 217 Cal.App.4th 1096, 1108; *Greenspan v. LADT LLC*, *supra*, 191 Cal.App.4th at p. 512 [Whether alter ego has been established "'is primarily a question of fact which should not be disturbed when supported by substantial evidence'"].) Given that the alter ego determination is equitable in nature, substituting our judgment for the trial court's would be particularly inappropriate. "'[S]ince this determination is . . . not a question of law, the conclusion of the trier of fact will not be disturbed if it is supported by substantial evidence.'" (*Misik v. D'Arco* (2011) 197 Cal.App.4th 1065, 1071-1072.)

Accordingly, our review seeks to determine whether any substantial evidence—contradicted or uncontradicted—supports the trial court's ruling. (*Sweatman v. Department of Veterans Affairs* (2001) 25 Cal.4th 62, 68.) "We view the evidence most favorably to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor. [Citation.] Substantial evidence is evidence of ponderable legal significance, reasonable, credible and of solid value." (*Oregel v. American Isuzu Motors, Inc.* (2001) 90 Cal.App.4th 1094, 1100.) We do not "reweigh the credibility of witnesses or resolve conflicts in the evidence." (*Rufo v. Simpson* (2001) 86 Cal.App.4th 573, 622.) The testimony of a single witness is sufficient to prove a fact. (*Pope v. Babick* (2014) 229 Cal.App.4th 1238, 1247.)

Lopez argues that "substantial evidence shows" a unity of interest between Saddleback Golf, Saddleback Electric, Semit, and Bellafaire such that "the separate personalities of the companies and Bellafaire do not in reality exist." (Capitalization &

7

boldfacing omitted.)  But this argument "attempts to turn the standard of review on its head.  We do not review the evidence to see if there is substantial evidence to support the losing party's version of events, but only to see if substantial evidence exists to support the [ruling] in favor of the prevailing party."  (*Pope v. Babick*, *supra*, 229 Cal.App.4th at p. 1245.)

*C.  Unity of Interest and Ownership*

The first factor in the alter ego determination, as noted above, is whether there is "'such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist.'"  (*Hasso v. Hapke*, *supra*, 227 Cal.App.4th at p. 155.)

"Factors for the trial court to consider include the commingling of funds and assets of the two entities, identical equitable ownership in the two entities, use of the same offices and employees, disregard of corporate formalities, identical directors and officers, and use of one as a mere shell or conduit for the affairs of the other.  [Citation.] 'No one characteristic governs, but the courts must look at all the circumstances to determine whether the doctrine should be applied.'"  (*Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1341–1342.)[1]

---

[1] Among the many other factors considered by courts in determining whether to pierce the corporate veil to hold an individual shareholder liable for corporate debts are "the commingling of funds and other assets; the failure to segregate funds of the individual and the corporation; the unauthorized diversion of corporate funds to other than corporate purposes; the treatment by an individual of corporate assets as his own; . . . the representation by an individual that he is personally liable for corporate debts; the failure to maintain adequate corporate minutes or records; the intermingling of the individual and corporate records; . . . the concealment of the ownership of the corporation; the disregard of formalities and the failure to maintain arm's-length transactions with the corporation; and the attempts to segregate liabilities to the corporation."  (*Mid–Century Insurance Co. v. Gardner* (1992) 9 Cal.App.4th 1205, 1213, fn. 3; see *Zoran Corp. v. Chen* (2010) 185 Cal.App.4th 799, 811-812.)  This list is far from exhaustive, and the court must consider the individual circumstances of each case.

8

Lopez asserts, citing *Associated Vendors, Inc. v. Oakland Meat Co.* (1962) 210 Cal.App.2d 825, that "the most important factor appears to be undercapitalization or inadequate capitalization." But the cited pages of that case do not so state.[2] Indeed, the court explicitly states that the factors "'vary according to the circumstances in each case inasmuch as the doctrine is essentially an equitable one and for that reason is particularly within the province of the trial court. Only general rules may be laid down for guidance.'" (*Id.* at p. 837.) Lopez does not point to any case that explicitly states one factor is the "most important," and he admits "[n]o one factor is determinative and the court will look at the totality of circumstances."

For their part, defendants claim "[t]he case of *Leek v. Cooper* (2011) 194 Cal.App.4th 399, is both factually and legally on point and compels this Court to affirm the trial court's findings . . . ." Setting aside the lack of horizontal stare decisis in the California Court of Appeal,[3] *Leek v. Cooper* held "[a] determination that a person is the alter ego of a corporation does not make the alter ego an employer. Rather, it makes the alter ego liable for the obligations of the corporation." (*Id.* at p. 409.) In the context of a summary judgment motion, the trial court determined the plaintiff's alter ego allegations were insufficiently pleaded in the complaint. (*Id.* at p. 416.) Accordingly, in the defendant's motion for summary judgment, it "had no burden to show that plaintiffs' alter ego claim could not be established." (*Ibid.*) The court further held no abuse of discretion in failing to permit leave to amend on the facts present.

In *Leek v. Cooper*, *supra*, 194 Cal.App.4th 399, while it has certain features in common with the present case, it is not the slam-dunk defendants seem to believe it is.

---

[2] Lopez's counsel needs to be more careful when citing cases. He claims *Turman v. Superior Court* (2017) 17 Cal.App.5th 969, 974, held that alter ego established where corporation was "not a profitable business." That was not the court's holding with respect to the alter ego issue. The court remanded that issue to the trial court with instructions. (*Id.* at p. 981.)

[3] See *Sarti v. Salt Creek Ltd.* (2008) 167 Cal.App.4th 1187, 1193.

This is not summary judgment; we have a record of trial, and we must still determine, based on the individual facts of this case, whether there is substantial evidence to support the court's decision.

Turning to that question, Lopez's opening brief discusses the factors he asserts support his claim of unity of interest and ownership between Saddleback Golf, Semit, and Bellafaire. But as we mentioned above, this is a review for substantial evidence. Rather than reviewing Lopez's contrary evidence to determine whether it is substantial or not, our task here is only to review the evidence *in favor of defendants* and determine whether it meets the substantial evidence test, contradicted or uncontradicted. (*Pope v. Babick*, *supra*, 229 Cal.App.4th at p. 1245.) Again, the only question here is whether Bellafaire, individually, or Semit were alter egos of Saddleback Golf/Saddleback Electric.

The trial court had evidence before it that Semit was a single purpose entity, established to purchase and hold real property. Semit had its own employer identification number and its own bank account. Bellafaire funded Semit and acted as guarantor for the mortgage. Semit leased the property back to Saddleback Golf (eventually assumed by Saddleback Electric), which paid rent to Semit from its bank account. Semit pays its mortgage to its lender from its own bank account.

The trial court also had evidence that Bellafaire Enterprises, which became the second incarnation of Saddleback Golf in 2005, maintained its own bank accounts. Bellafaire testified that he never paid for personal expenses from Saddleback Golf's account. Saddleback Golf, until taken over by Saddleback Electric, had insurance in its own name and maintained its own financial records. Once Saddleback Electric was incorporated, it took over payroll from Saddleback Golf, paid taxes, and had insurance in its name.

Even if we were to consider the facts Lopez raises, we would find them unpersuasive. Ultimately, "[i]t is the plaintiff's burden to overcome the presumption of

10

the separate existence of the corporate entity." (*Mid–Century Insurance Co. v. Gardner*, *supra*, 9 Cal.App.4th at p. 1212.) Lopez's attempt to assert "commingling" of assets based on benign facts such as Bellafaire's personal use of a corporate vehicle and the fact that Bellafaire's home address in San Clemente is also used by Saddleback Golf as its business mailing address are unimpressive. Bellafaire testified that "[i]t's not the principal place of business. It's just a mailing address" and Lopez cites nothing to establish otherwise.

Lopez also complains about a lack of meetings and voting for single-member LLC Semit, but ignores Corporations Code section 17703.4, subdivision (b), which states "that the failure to hold meetings of members or managers or the failure to observe formalities pertaining to the calling or conduct of meetings shall not be considered a factor tending to establish that a member or the members have alter ego or personal liability for any debt, obligation, or liability of the limited liability company where the articles of organization or operating agreement do not expressly require the holding of meetings of members or managers."

Regardless, Lopez's countervailing facts are not at issue here – only whether the facts in defendants' favor constitute substantial evidence. Importantly, there was no evidence of improper commingling of assets, nor was there evidence of undercapitalization. Lopez cites a portion of testimony stating that Saddleback Electric's current assets, at the time of trial, were less than its liabilities. But Saddleback Golf/Saddleback Electric has been an ongoing business since the 1970's. Lopez does not cite authority for the proposition that a company's current debt – particularly a company with a long history – is proof of undercapitalization.

We find the trial court had sufficient evidence from which to conclude defendants were not alter egos of Semit or Bellafaire.

11

*D. Equities*

The second factor in determining alter ego status that "'there must be an inequitable result if the acts in question are treated as those of the corporation alone.'" (*Hasso v. Hapke*, *supra*, 227 Cal.App.4th at p. 155.)  The true heart of Lopez's argument lies here – that if there is a judgment, Saddleback Golf/Saddleback Electric, alone, will not be able to pay it.  ("As discussed above, [Saddleback Golf] and [Saddleback Electric] are both insolvent as going concerns.")  But "[d]ifficulty in enforcing a judgment does not alone satisfy this element." (*Leek v. Cooper*, *supra*, 194 Cal.App.4th at p. 418.)  The plaintiff must also produce evidence of some conduct amounting to bad faith.  (*Ibid.*)

At the end of the day, all that the evidence shows here is an individual (Bellafaire) who owns a longstanding business through a corporate entity (Saddleback Golf/Saddleback Electric) who used an LLC (Semit) to purchase the real property where the business operates.  This is simply not malfeasance, bad faith, or fraud.  The trial court had substantial evidence to support its conclusion that Bellafaire and Semit were not the alter egos of Saddleback Golf/Saddleback Electric.


*E. Attorney Fees*

In an argument of less than two pages, Bellafaire and Semit request we award them attorney fees for a frivolous appeal.  Defendants' request is procedurally deficient, and we therefore decline to consider it.  (Cal. Rules of Court, rule 3.1702(c).)  Moreover, even if we were to consider it, we would not find that Lopez's arguments were objectively without foundation.  (*Williams v. Chino Valley Independent Fire Dist.* (2015) 61 Cal.4th 97, 115.)

## III

### DISPOSITION

The judgment in favor of Bellafaire and Semit is affirmed. They are entitled to their costs on appeal. Their request for attorney fees is denied.


MOORE, ACTING P. J.

WE CONCUR:


GOETHALS, J.


DELANEY, J.