Filed 3/7/13  Harris v. County of Los Angeles CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| PRESTON THOMAS HARRIS et al., | B239113 |
| Plaintiffs and Appellants, | |
| v. | (Los Angeles County Super. Ct. No. BC438196) |
| COUNTY OF LOS ANGELES, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. William F. Highberger, Judge.  Affirmed.

Law Offices of A. George Glasco and A. George Glasco for Plaintiffs and Appellants.

Lawrence Beach Allen & Choi, Michael D. Allen and Matthew P. Allen for Defendant and Respondent.

_____

Plaintiffs and appellants Rarebreed Motorcycle Club, Inc. (Rarebreed) and its officers Preston Thomas Harris (Harris), Kenneth Williams and Lanny Thomas (sometimes collectively appellants) appeal from the summary judgment granted in favor of defendant and respondent County of Los Angeles (County). We affirm, finding no triable issue of material fact on appellants' cause of action for nuisance.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Rarebreed has a motorcycle club located in a commercial and industrial district on South Broadway Street in an unincorporated area of Gardena. Rarebreed's clubhouse has a capacity of 250 to 300 people. It has two entrances, a front door on Broadway and a roll-up back door on a public alley. Rarebreed planned a 20-year anniversary celebration over three days on June 24, 25 and 26, 2009. Due to a history of violence at Rarebreed's clubhouse, including shootings, the Compton and Carson stations of the Los Angeles County Sheriff's Department (LASD) prepared operations plans to ensure that the anniversary celebration was conducted in a safe, secure and law-abiding manner, to prevent property damage, and to keep traffic in the area safely flowing.

### *June 24, 2009*

On the night of June 24, 2009, a sheriff's sergeant set up a command post in a parking lot near Rarebreed's clubhouse, and LASD personnel were in constant communication with the command post. Rarebreed's party started at 8:00 p.m. and its members placed cones in the alley behind the clubhouse to block cars from parking in the alley. They did not have a permit to do so. Over the next few hours, LASD personnel observed the following: Motorcycles parked on the street outside of designated parking areas and illegally parked on the sidewalks; motorcycles and attendees blocking streets and sidewalks; attendees drinking alcohol on public sidewalks; motorcyclists speeding

---

[1] The facts are taken from the separate statement of undisputed facts, which contains 231 facts. Although appellants disputed many of these facts, most of the County's objections to appellants' evidence were sustained, which appellants' opening brief amazingly fails to disclose.

and "revving" their engines loudly; loud music from both inside the clubhouse and outside on motorcycle radios, and attendees yelling and shouting.

LASD personnel received a complaint call from the public to respond to Rarebreed's clubhouse. LASD personnel notified the event organizer that laws were being violated. At approximately 11:30 p.m., LASD personnel asked the crowd to disperse, explaining that the crowd was an unlawful assembly. LASD personnel took a video of the dispersal, which was conducted in an orderly fashion.

### June 25, 2009

There were no large parties at Rarebreed's clubhouse on June 25, 2009. That evening, Rarebreed held a "Meet-and-Greet" at the nearby Magic Wheels clubhouse at 6:00 p.m., which also had a front door and pull-up back door. None of the individual appellants attended this event. At approximately 7:30 p.m., LASD personnel arrived at Magic Wheels's clubhouse and observed motorcycles and attendees blocking streets and sidewalks; attendees drinking alcohol in public; attendees yelling and shouting; and speeding motorcycles. At 10:30 p.m., LASD personnel asked the crowd to disperse, explaining the reason for the dispersal.

### June 26, 2009

On June 26, 2009, Rarebreed held an event at a Harley Davidson dealership from 6:00 p.m. to 9:00 p.m. The event "turned out great" and was not shut down by the LASD. After the Harley Davidson event, attendees headed over to Rarebreed's clubhouse and a crowd developed. LASD personnel observed the same problems as they had at the June 24, 2009 event, including blocked streets and sidewalks, public consumption of alcohol, speeding motorcycles, and loud noise and music. At approximately 11:30 p.m., LASD personnel dispersed the crowd.

### The Pleadings

Appellants sued the County and others as a purported class action, alleging various causes of action including racial discrimination, nuisance and emotional distress. The County moved for summary judgment on the causes of action against it for emotional distress and nuisance. As to nuisance, the County argued that (1) appellants could not

3

prove the elements of nuisance, and (2) the County was statutorily immune from liability for nuisance. The County supported its motion with declarations from 11 LASD personnel, deposition testimony of the three individual appellants, documentary evidence, and colored photographs taken during the three evenings. Appellants opposed the motion, addressing only the first ground raised, and relied primarily on the declaration of Harris, a retired sergeant with the LASD. As noted, the trial court granted most of the County's objections to Harris's declaration. The trial court tentatively granted the motion for summary judgment, but allowed the parties to file further briefing on the issue of whether the County had immunity for nuisance liability. After a further hearing on the matter, the trial court adopted its tentative ruling and granted summary judgment in favor of the County. This appeal followed.

## DISCUSSION

### I.    Standard of Review.

We review a grant of summary judgment de novo, considering "'all of the evidence set forth in the [supporting and opposition] papers, except that to which objections have been made and sustained by the court, and all [uncontradicted] inferences reasonably deducible from the evidence.'" (*Artiglio v. Corning Inc.* (1998) 18 Cal.4th 604, 612.) A defendant "moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) The moving defendant may meet this burden either by showing that one or more elements of a cause of action cannot be established or by showing that there is a complete defense thereto. (Code Civ. Proc., § 437c, subd. (o)(2); *Aguilar v. Atlantic Richfield Co., supra,* at p. 850.) "'[A]ll that the defendant need do is to show that the plaintiff cannot establish at least one element of the cause of action . . . [;] the defendant need not himself conclusively negate any such element . . . .' [Citation.]" (*Mills v. U.S. Bank* (2008) 166 Cal.App.4th 871, 894.) Once the moving party's burden is met, the burden shifts to the plaintiff to demonstrate the existence of a triable issue of material fact. (*Silva v. Lucky Stores, Inc.* (1998) 65 Cal.App.4th 256, 261.) The plaintiff must produce "'*substantial*'"

4

responsive evidence sufficient to establish a triable issue of fact.  (*Leek v. Cooper* (2011) 194 Cal.App.4th 399, 417.)  "A party cannot avoid summary judgment based on mere speculation and conjecture [citation], but instead must produce admissible evidence raising a triable issue of material fact."  (*Vournas v. Fidelity Nat. Tit. Ins. Co.* (1999) 73 Cal.App.4th 668, 672; Code Civ. Proc., § 437c, subd. (d).)

**II.     Appellants Did Not Create a Triable Issue of Fact on Their Nuisance Claim.**

Appellants challenge the summary judgment only with respect to their nuisance cause of action.

### A.  *Applicable Law*

Civil Code section 3479 defines nuisance as follows:  "Anything which is injurious to health, including, but not limited to, the illegal sale of controlled substances, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway, is a nuisance."

To recover damages for nuisance on an obstruction theory, the plaintiff must prove not only that the obstruction interfered with the use and enjoyment of property, but the two "additional elements" that the interference was substantial and unreasonable.  (*San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893, 937; *Fashion 21 v. Coalition for Humane Immigrant Rights of Los Angeles* (2004) 117 Cal.App.4th 1138, 1154.)  To demonstrate the interference was substantial, the plaintiff must provide evidence that he or she suffered "'substantial actual damage.'"  (*San Diego Gas & Electric Co., supra,* 13 Cal.4th at p. 938.)  To demonstrate the interference was unreasonable, the test "is whether the gravity of the harm outweighs the social utility of the defendant's conduct."  (*Ibid.*)

### B.  *No Obstruction*

The first amended complaint alleged that the County (acting through the LASD) created a nuisance by closing Rarebreed's and Magic Wheels's clubhouses and "by interfering with the use and/or enjoyment by the members of RAREBREED of the streets

5

of the county of Los Angeles." But appellants did not produce admissible evidence of any physical obstruction.

In the separate statement of undisputed facts, appellants conceded that on the first day of the anniversary celebration, June 24, 2009, no sheriff's deputies were blocking the back door of Rarebreed's clubhouse, and when LASD personnel left the clubhouse, a few Rarebreed members stayed inside to break down equipment and help close up. Appellants also conceded that on the second day of the anniversary celebration, June 25, 2009, neither of the two entrances to Magic Wheels's clubhouse were blocked in any way, and LASD personnel observed people entering and exiting the clubhouse after the crowd dispersed. Finally, appellants conceded that on the final day of the anniversary celebration, June 26, 2009, LASD personnel did not physically block entry to Rarebreed's clubhouse nor were they ordered to block entry to the clubhouse, and appellant Kenneth Williams entered the clubhouse 10 minutes after the crowd dispersed and there were still people inside cleaning up.

With respect to blocking the streets, the County produced evidence that on June 24, 2009, LASD personnel observed motorcycles and other vehicles parked on public streets outside of designated parking areas blocking the streets, motorcycles illegally parked on the sidewalk which prevented pedestrians from walking on the sidewalk, and attendees congregated on the street "creating a crowd which prevented the free flow of traffic." Although appellants attempted to dispute this evidence, the County's objections to appellants' evidence were sustained. Thus, these facts remained undisputed. The County also produced evidence that on June 25, 2009, the streets around Magic Wheels's clubhouse were blocked and created a fire safety hazard and that on June 26, 2009, numerous vehicles were parked outside of designated parking areas blocking the streets around Rarebreed's clubhouse. Appellants attempted to dispute this evidence by relying on Harris's declaration that the streets were blocked only by LAPD patrol cars. But again, objections to appellants' evidence were sustained, thus leaving these facts undisputed.

6

While appellants disputed the County's evidence that the crowds grew beyond 500 people, relying on Harris's declaration that only half this number attended, the number is immaterial.  Regardless of the actual number of attendees, the above facts are uncontroverted.  Additionally, the County produced photographs posted online by Rarebreed member Will Free (Free), which showed crowds of attendees congregating in the streets and alleys, and motorcycles parked on the sidewalk.  LASD personnel corroborated that these photographs accurately depicted what they observed.  Although appellants relied on Free's declaration that "none of those photographs had anything to do with any events held by Rarebreed during the years 2009 to and including 2010," the County provided evidence that Free had produced these photographs himself in response to a subpoena, and the trial court sustained the County's objections to appellants' evidence.

Accordingly, appellants have not produced specific, admissible evidence to create a genuine issue of material fact as to whether a physical obstruction was created.

### C.  No Substantial Interference

To meet the second element of their nuisance claim based on an obstruction theory, appellants must provide evidence that they suffered "'substantial actual damage.'" (*San Diego Gas & Electric Co., supra*, 13 Cal.4th at p. 938.)  The degree of harm is determined objectively.  (*Ibid*.)  Appellants failed to produce evidence of damage.

Appellants did not produce any evidence of expenses incurred as a result of the crowd dispersal, any evidence of lost ticket revenue, or any evidence of wasted food or alcohol.  Indeed, the celebrations lasted many hours each night before the LASD dispersed the large crowds.  Thus, there is no evidence of any damages, much less of "substantial actual damage."

### D.  No Unreasonable Interference

The final element of their nuisance claim requires appellants to show that the interference with the use and enjoyment of their property was unreasonable.  To prove this element, appellants must show that the gravity of the harm they suffered outweighs

the social utility of the LASD's conduct. (*San Diego Gas & Electric Co., supra*, 13 Cal.4th at p. 938.) Again, the test is objective. (*Ibid*.)

Even assuming appellants suffered harm, the social utility of the LASD's conduct outweighed such harm. (See *Cox v. Louisiana* (1965) 379 U.S. 536, 554–555 ["Governmental authorities have the duty and responsibility to keep their streets open and available for movement"].) It is undisputed that the anniversary celebrations created large crowds that spilled onto and blocked public streets, sidewalks and alleys, that there was public consumption of alcohol, speeding motorcycles, and loud noise, music and yelling. It cannot be said that the LASD's decision to take control of the situations by dispersing the large crowds was objectively unreasonable under these circumstances. The County produced evidence that given the large size of the crowds and the numerous legal violations occurring, it was not feasible to make individual arrests.

Moreover, appellants conceded that the LASD's operations plans were necessary "to ensure that the 2009 Anniversary Celebration was conducted in a safe, secure and law-abiding manner, to prevent property damage and to keep traffic in the area of the Rarebreed clubhouse safely flowing"; that prior planning by the LASD "was a necessary and essential safeguard to ensure that the 2009 anniversary celebration was not marred by violence and would be conducted in a safe and legal manner"; and that the LASD "engaged in traffic control to ensure attendees left in an orderly manner." Indeed, unlike the violence that occurred at past Rarebreed events, there were no shootings at the 2009 anniversary celebrations.

Because appellants failed to create a genuine issue of material fact on their nuisance cause of action, the trial court properly granted summary judgment on this claim.[2]

---

[2]     Accordingly, we need not reach the alternative basis for summary judgment that the County had statutory immunity for a nuisance claim under Civil Code section 3482, "Nothing which is done or maintained under the express authority of a statute can be deemed a nuisance."

## DISPOSITION

The summary judgment is affirmed.  The County is entitled to recover its costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
                          ASHMANN-GERST


We concur:


_____, P. J.
            BOREN


_____, J.
            CHAVEZ