Filed 9/1/16  Radakovic v. County of Los Angeles CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| DIANA RADAKOVIC et al., | B266194 |
| Plaintiffs and Appellants, | (Los Angeles County |
| v. | Super. Ct. No. MC024244) |
| COUNTY OF LOS ANGELES, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Mark Mooney, Judge.  Affirmed.

Law Office of George H. Jones and George H. Jones for Plaintiffs and Appellants.

Peterson Bradford Burkwitz, Avi Burkwitz and Richard Barrios, for Defendant and Respondent.

Plaintiffs and appellants Diana Radakovic (Radakovic) and Sean Rougeau (Rougeau) are a married couple, and both worked for defendant and respondent County of Los Angeles (County or defendant). In 2011, Radakovic sued the County under the California Fair Employment and Housing Act (FEHA), alleging retaliation after Radakovic complained of racial discrimination. In 2012, a court granted summary judgment to the County in that action. In 2013, Radakovic, joined by her husband Rougeau, filed another action against the County for retaliation and failure to prevent retaliation that was largely based on the same allegations presented in Radakovic's 2011 complaint. A court again granted summary judgment to the County, this time also awarding attorney fees to the County under a FEHA provision that permits a prevailing defendant to recover attorney fees if the action was "objectively without foundation." (Gov. Code[1] § 12965, subd. (b); *Williams v. Chino Valley Independent Fire Dist.* (2015) 61 Cal.4th 97, 115 (*Williams*).) We consider whether the award of attorney fees to the County was an abuse of the trial court's discretion.

## I. BACKGROUND[2]

### A. *Plaintiffs' Complaints*

Radakovic and Rougeau both worked as nurses for the County, albeit at different facilities. According to plaintiffs, after Radakovic's supervisor, Katty Callender (Callender), learned Radakovic, a Hispanic woman, was married to Rougeau, who is African American, Callender engaged in the following acts from mid-2010 to mid-2011, all of which Radakovic alleged to be discriminatory and retaliatory: forcing Radakovic to remove family photos from her office area, denying her requested vacation time off,

---

[1]     Undesignated statutory references that follow are to the Government Code.

[2]     Multiple documents that were filed in the trial court are not in the record on appeal. Our summary of the relevant background facts is taken primarily from plaintiffs' 2013 complaint and, where the evidence appears to be undisputed, from the County's separate statement of material facts submitted in support of its motion for summary judgment. Plaintiffs did not include their own separate statement, or any response to the County's, in the record.

2

issuing evaluations of Radakovic's work performance that were more negative than those she received prior to Callender's supervision, and assigning her to a less favorable work schedule.

In August 2011, Radakovic sued the County for retaliation based on these allegedly unlawful actions.[3] A year later, a court granted summary judgment in full to the County. Radakovic did not appeal.

Radakovic, this time joined by Rougeau, again sued the County in 2013, with both plaintiffs alleging causes of action for retaliation and failure to prevent retaliation under FEHA. The bulk of their complaint describes the aforementioned actions by Callender in 2010 and 2011. Plaintiffs also asserted, however, that after Radakovic sued the County in 2011, it retaliated against plaintiffs in the following ways: (1) Callender denied Radakovic a two-day vacation request made in September 2011, (2) Callender "falsely initiated" an investigation into Radakovic in October 2011, which ultimately resulted in the County suspending her for 15 days in May 2013, (3) Callender unfairly rated Radakovic's work performance as merely "competent" in December 2011, (4) Callender's assistant continued to pressure Radakovic to remove family photos from her workspace, and (5) the County commenced a "wrongful[]" investigation into Rougeau in December 2011 that ultimately resulted in his "forced" resignation in February 2013. Radakovic continues to work for the County, but she is now at a different facility where she is no longer supervised by Callender.

B.     *Defendant's Motion for Summary Judgment*

In August 2014, the County moved for summary judgment on all of plaintiffs' causes of action, contending res judicata barred the greater part of their claims and those that remained were meritless. The County argued that plaintiffs' allegations predating

---

[3]     Radakovic's 2011 complaint is not included in the record but the County provides a chart documenting the similarity of allegations made in the 2011 and 2013 complaints, and there is no evidence in the record plaintiffs disputed the County's comparison of the allegations in the two suits.

the 2011 complaint had been adjudicated on the merits against Radakovic or were now precluded because they could have been raised in that action.  As to the allegations concerning events that occurred after the 2011 complaint, the County contended plaintiffs could not state a prima facie case for retaliation or rebut the County's legitimate business reasons for its actions, namely, that the County initiated disciplinary procedures against plaintiffs based on uncontroverted evidence plaintiffs misused County property.

The County argued Radakovic could not establish a prima facie case of retaliation based on her December 2011 performance evaluation because the evaluation did not constitute an adverse employment action, citing *Pinero v. Specialty Restaurants Corp.* (2005) 130 Cal.App.4th 635, 646 (oral or written criticism of employee's work performance not an adverse employment action where criticism was supported by legitimate business reasons and employee did not experience any changes in responsibilities, title, salary, or other forms of compensation).  Here, Callender rated Radakovic "competent" after observing deficiencies in Radakovic's work efficiency, documentation, and compliance with County policies and instructions.  The County asserted Radakovic was not disciplined, demoted, or otherwise subjected to any change in her employment on account of the evaluation and argued Radakovic could point to no evidence suggesting the evaluation was retaliatory.

As to Radakovic's suspension in 2013, the County contended she could not adduce evidence supporting an inference of retaliation.  The County explained it began investigating Radakovic for sending inappropriate e-mails after one of Radakovic's coworkers, Emilia Ramos, complained about receiving such an e-mail from Radakovic. After Ramos reported the e-mail to her manager (who was not Callender), an unknown person called the County Auditor Fraud Hotline (Fraud Hotline), which investigates misuse of County resources. Two employees in the County's Administrative Deputy's office opened an investigation, and they discovered Radakovic had sent numerous inappropriate e-mails to both fellow employees and outside parties, some of which were provocative or sexual in nature and one of which disclosed a juvenile's private protected

4

information. Radakovic did not deny sending the e-mails. On the basis of its investigation, the County suspended her for 15 days in May 2013.[4]

Addressing Rougeau's retaliation claims, the County contended they were meritless because he presented no proof he had exhausted his administrative remedies by submitting a complaint to the Department of Fair Employment and Housing (DFEH) (§ 12960, subds. (b) & (d)), the County took no adverse employment actions against him, and Rougeau could point to no evidence implying the County decided to discharge him because he engaged in protected activity.

Instead, the County submitted evidence to demonstrate it began investigating Rougeau's use of e-mail after noticing "thousands" of non-work-related e-mails to and from his account during its investigation of Radakovic. In looking into Rougeau's e-mail activity, the County found graphic, sexually explicit images, videos, and messages, including pictures of nude bodies, genitalia, and people engaged in sexual activity; sexist and offensive jokes; and personal communications of a graphic and sexual nature. Upper-level County administrators supported terminating Rougeau, and the County notified him of its intent to do so. Rougeau resigned before the County finalized his discharge, stating that he was doing so in order to go back to school, which he apparently did.

In opposition to the County's motion for summary judgment, plaintiffs argued material, triable issues of fact existed as to whether the County's suspension of Radakovic and Rougeau's "forced" resignation were retaliatory.[5] With respect to Radakovic, plaintiffs argued that because her suspension was purportedly initiated by a call to the Fraud Hotline, the source of the call could reveal a retaliatory motive. Plaintiffs asserted there was conflicting evidence on that issue and that a jury could infer

---

[4] A hearing officer of the Civil Service Commission upheld Radakovic's suspension. She did not appeal the decision.

[5] In opposing the County's motion, plaintiffs limited their arguments to these two actions; they did not address any of the other allegations made in their complaint.

from the conflict that no one in fact did call the Fraud Hotline, which would mean the County lied about the basis for Radakovic's suspension. As to Rougeau, plaintiffs argued he engaged in protected activity by serving as a potential witness in Radakovic's 2011 lawsuit, his resignation should be deemed a constructive termination, and a factfinder could surmise that Callender, motivated by hostility toward Radakovic's interracial marriage, somehow had a hand in the investigation of Rougeau.

The summary judgment hearing before the trial court, which took place over two days in November 2014 and January 2015, was not transcribed by a court reporter and no settled statement of the proceedings is included in the record. After the November hearing, the court granted summary judgment to the County as to Radakovic's claims. It continued the hearing as to Rougeau to allow him to prove he had filed a timely complaint with DFEH.

Neither Rougeau nor his attorney appeared at the continued hearing, nor did either submit any evidence of Rougeau's DFEH filing. The court accordingly "adopted its tentative ruling of November 18, 2014 as the final ruling" of the court. The tentative ruling the court adopted is not included in the record on appeal, but the final judgment, which is, reads: "[p]ursuant to Section 437c(g) of the Code of Civil Procedure, the Court finds that there are no triable issues of material fact and that [the County] is entitled to summary judgment as to both [Radakovic's and Rougeau's] causes of action . . . ." The record further indicates that the grant of summary judgment as to Rougeau's claims was based on his failure to exhaust administrative remedies. Plaintiffs did not appeal the judgment.

### C. Defendant's Motion for Attorney Fees

In April 2015, the County brought a motion to recover its attorney fees. It acknowledged that prevailing defendants in FEHA actions were not routinely awarded fees but argued—with citation to applicable authority—an award was appropriate in this case because plaintiffs' claims were frivolous, vexatious, and without merit.

6

With regard to Radakovic's claims, the County argued that by opposing summary judgment solely on the basis of her temporary suspension, Radakovic "abandon[ed] the vast majority of [her] allegations" in support of retaliation, demonstrating she "knew the facts contained in the instant lawsuit were previously litigated as part of her previous lawsuit and were therefore barred under res judicata and claim preclusion." It argued further that Radakovic's suspension-based retaliation claim was frivolous because there was no evidence from which a factfinder could infer any of the parties involved in Radakovic's suspension bore retaliatory animus against her and Radakovic offered no argument to suggest the underlying basis for her suspension, which was supported by uncontroverted evidence, was pretextual.

The County argued Rougeau's claims were likewise frivolous because he provided no evidence he had filed a complaint with DFEH, which was a prerequisite to bringing his FEHA claims in the first place, and he failed to appear at the continued summary judgment hearing. The County also asserted Rougeau did not deny sending inappropriate videos, images, and jokes through his work e-mail account, which was the basis for the County's decision to discharge him, and Rougeau pointed to no evidence suggesting the County's decision was pretextual.

The County requested attorney fees based on a reasonable hourly rate calculated under the lodestar method or, in the alternative, actual fees billed to date. The County said it spent 455 attorney hours defending against plaintiffs' suit and sought to recover $141,000 based on a rate of $400 per hour for the 45 hours ($18,000) billed by the partner who worked on the matter and $300 per hour for the 410 hours ($123,000) billed by the associate on the case.[6] The County acknowledged its attorneys actually charged a lower billing rate ($155 per hour) than it sought to recover but argued that counsel's

---

[6]     The County's attorneys attributed the time spent on the action to taking and defending depositions, reviewing documents, conducting discovery, attending hearings, meeting with witnesses, and preparing motions, including the motion for summary judgment, on which they spent 75 hours, and the motion for attorneys' fees, which took 10 hours.

actual billing rate was far below market rate for employment attorneys in the Los Angeles area. As an alternative to recovery under the lodestar method, the County sought actual fees at a rate of $155 per hour for 455 hours billed, totaling $70,525.

In their opposition to the County's motion for attorney fees, plaintiffs argued their case had merit by emphasizing the same allegations and contentions they had made in previous filings. In addition, they contended Radakovic's claims were not entirely barred by res judicata, that vigorously pursuing their rights did not render the litigation frivolous, and that the number of hours the County's counsel claimed to have worked on the case belied their argument the suit was without merit. Plaintiffs also provided, for the first time, evidence Rougeau had filed a complaint with DFEH before bringing suit.[7]

The trial court held a contested hearing on the motion, but the record on appeal contains no reporter's transcript or settled statement of the proceeding. In a minute order, the court indicates it read and reviewed the parties' submissions and considered their oral arguments. The court granted the County's motion for attorney fees in the amount of $35,185, and its written order states: "The Court hereby rules that good cause has been shown to grant Defendant's Motion for Attorney's Fees. In particular, this Court finds that Plaintiffs failed to present any admissible evidence in opposition to Defendant's Motion for Summary Judgment, especially with regard to Legitimate Business Reason, and further find that Plaintiffs' counsel's failure to appear at the continued MSJ hearing was a tacit admission that the case had no merit."

---

[7]     Rougeau apparently filed a complaint with DFEH in July 2012 but his name was misspelled on the submission. Thus, when the County requested a copy of Rougeau's filing from DFEH, it was told no records were available. In a declaration executed in November 2014, prior to the first summary judgment hearing, plaintiffs' counsel stated Rougeau's complaint was "in the process of being produced." There is evidence DFEH sent a copy of Rougeau's complaint to plaintiff's counsel on November 21, 2014, but plaintiffs did not actually provide a copy of Rougeau's DFEH complaint until after summary judgment, when the County brought its motion for attorney fees.

## II. DISCUSSION

Plaintiffs contend their suit had merit such that an award of attorney fees for a prevailing defendant under FEHA was an abuse of the trial court's discretion. We conclude, on the basis of the limited record before us, that plaintiffs have failed to carry their burden to demonstrate the trial court erred. We therefore affirm the fee award.

### A.    Operative Legal Principles and Standard of Review

FEHA authorizes courts to award prevailing parties their "reasonable attorney's fees and costs." (§ 12965, subd. (b).) It is well settled, however, that a prevailing defendant in a FEHA action may only recover attorney fees if "the action was objectively without foundation when brought, or the plaintiff continued to litigate after it clearly became so."[8] (*Williams*, *supra*, 61 Cal.4th at p. 115; accord, *Leek v. Cooper* (2011) 194 Cal.App.4th 399, 419 [defendant in a FEHA action may only recover attorney fees if "the action was unreasonable, frivolous, meritless or vexatious"]; *Mangano v. Verity, Inc.* (2008) 167 Cal.App.4th 944, 949 [suit must be "groundless or without foundation"].) A plaintiff's lack of success, by itself, does not justify an award of fees to the defendant, but the prevailing defendant need not show the plaintiff initiated the suit in bad faith to recover fees. (*Christiansburg*, *supra*, 434 U.S. at p. 421.)

Where a court concludes a prevailing party should recover attorney fees under section 12965, subdivision (b), it ordinarily proceeds by "first determin[ing] a touchstone or lodestar figure based on a careful compilation of the time spent by, and the reasonable hourly compensation for, each attorney, and the resulting dollar amount is then adjusted upward or downward by taking various relevant factors into account. [Citations.]" (*Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 985.) In awarding attorney fees to

---

[8]    This standard derives from *Christiansburg Garment Co. v. Equal Employment Opportunity Com.* (1978) 434 U.S. 412 (*Christiansburg*), in which the United States Supreme Court held that prevailing defendants in federal civil rights actions must meet a higher bar when seeking attorney fees than prevailing plaintiffs in order to deter meritless litigation without discouraging plaintiffs from filing claims with a reasonable basis. (See *Williams*, 61 Cal.4th at pp. 109-112.)

a prevailing defendant under FEHA, the trial court "must make 'express written findings' demonstrating that it has applied the proper standards. [Citation.]" (*Robert v. Stanford University* (2014) 224 Cal.App.4th 67, 70 (*Robert*).) We review an award of attorney fees to a prevailing defendant in a FEHA action for abuse of discretion (see *id.* at p. 73), keeping in mind such discretion must be exercised within the boundaries of the standards enunciated above.

### B.      Analysis

The party challenging an award of attorney fees bears the burden of providing an adequate record to demonstrate error.  (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295.) Here, there are certain materials not included in the record, most significantly, a reporter's transcript or settled statement of relevant court proceedings.  We do not presume error on appeal; rather, the opposite is true: we presume that the court's fees order is correct unless plaintiffs can demonstrate otherwise.  (*Hearn v. Howard* (2009) 177 Cal.App.4th 1193, 1201; *Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440, 447 (*Vo*).)

Although the court's written attorney fees order was not detailed, when combined with the statement that the court considered the parties' comprehensive briefing and oral arguments—which set forth, without dispute or objection, the applicable legal standard— the order sufficiently demonstrates the court concluded both plaintiffs' claims were objectively without foundation.

The bulk of Radakovic's claims largely stemmed from conduct predating her 2011 complaint and could be found, therefore, to have been precluded by the prior adjudication on the merits against her.  The trial court reasonably concluded that pursuing a second lawsuit on the basis of those same allegations was unreasonable.  Radakovic essentially conceded her claims were largely barred by res judicata and could survive only on the basis of her challenge to the County's 15-day suspension of her employment in 2013.

The record before the trial court supported a determination that Radakovic's decision to prosecute that challenge was objectively without foundation.  To prevail on a

10

claim of retaliation under FEHA, the plaintiff must show "(1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action. [Citations.]" (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042.) Radakovic adduced no evidence from which a factfinder could infer a causal link between her 2011 lawsuit and 2013 suspension. The only dispute of fact offered by Radakovic to support her claim is that it was unclear who made the anonymous call to the Fraud Hotline regarding Radakovic's e-mail use. While Radakovic alludes to evidentiary support for that contention, the record before us is inadequate to support it. What the record does show is that the County began investigating Radakovic after a coworker complained to a manager about Radakovic's e-mail use and that Radakovic pointed to no evidence suggesting she did not send the e-mails at issue or that the County's grounds for her suspension were otherwise unmerited. Where a prior motion for summary judgment had been granted on similar, albeit not identical claims, this is a frivolous basis on which to mount a retaliation suit.

The record also supports a finding by the trial court that Rougeau's claims were objectively meritless. While the failure to exhaust administrative remedies is not a ground in itself for concluding a suit lacks merit (*Hon v. Marshall* (1997) 53 Cal.App.4th 470, 477-478), the court in this case did not grant judgment against Rougeau solely on the basis of what then appeared to be a failure to file a complaint with DFEH. The court's final judgment, in which it found "there [were] no triable issues of material fact" as to either of plaintiff's claims, and its order awarding attorney fees, in which it ruled both plaintiffs failed to present any evidence to rebut the County's legitimate business reasons for its actions, support a conclusion that the court determined Rougeau's suit was groundless on its merits, regardless of whether or not he exhausted his administrative remedies. Plaintiffs confirm this interpretation in their opposition to the County's motion for attorney fees, where they state the court "ruled on all issues in the [motion for

11

summary judgment] on November 18, 2014."[9] The court's presumed conclusions are further supported by the record. There was no evidence from which a factfinder could infer Rougeau engaged in protected activity or, a fortiori, that the County forced him to resign because he engaged in protected conduct. Nor did Rougeau point to any evidence susceptible to an intimation of pretext. Rougeau did not work at the same facility as Radakovic and he had no connection to Callender, the alleged source of discriminatory and retaliatory motive. Finally, the court was justified in concluding that Rougeau's failure to appear at his continued summary judgment hearing "was a tacit admission that the case had no merit." On the limited record before us, we cannot evaluate Rougeau's assertion that he was not required to appear at the hearing. All we have to rely upon is the court's order awarding attorney fees, which clearly conflicts with Rougeau's statement. Nor has Rougeau offered any explanation for why he waited so long to provide a copy of his DFEH complaint.

We also see no abuse of discretion in the amount of attorney fees the court awarded to the County. Plaintiffs generally challenge the number of hours the County's attorneys claimed to have spent on the case but do not otherwise question the trial court's method of calculating fees. Without a reporter's transcript or settled statement of the hearing, we cannot examine the court's methodology in awarding fees nor do we know whether plaintiffs made any specific objections to the County's breakdown of time expended on the litigation. The lack of an adequate record therefore precludes us from holding the Court abused its discretion in making its specific award. (*Vo*, *supra*, 79 Cal.App.4th at p. 448.)

Furthermore, even on the inadequate record we do have, we see no error. By declaration, the County's attorneys stated they performed 455 hours of work defending against plaintiffs' suit and asked for $141,000 in fees under the lodestar method. The court's award reflects a decision to give the County only their actual fees, and based on

---

[9]    In fact, plaintiffs argue they did not believe they needed to appear at the January hearing for this very reason, that the court had already made its summary judgment ruling as to both plaintiffs' claims in November.

12

half the claimed hours worked. While we do not know whether the court halved the number of hours requested because it determined only some of plaintiffs' claims were meritless or because it determined that such smaller number of hours more reasonably reflected the nature of the lawsuit, in either case the court's decision to reduce the requested fees by approximately 75 percent strikes us as a proper exercise of its discretion.

DISPOSITION

The judgment is affirmed. Respondent is to recover its costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, J.

We concur:

KRIEGLER, Acting P.J.

RAPHAEL, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.