Filed 5/27/21  Creation Harmony Trading v. Li CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
### SECOND APPELLATE DISTRICT
### DIVISION FOUR

| | |
|---|---|
| CREATION HARMONY TRADING INC., | B301004 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. EC068777) |
| v. | |
| XIAOYU LI, | |
| Defendant and Appellant. | |

APPEAL from judgment of the Superior Court of Los Angeles County, Curtis A. Kin, Judge. Reversed in part.

Law Office of Yoon O. Ham, Yoon Ham for Defendant and Appellant.

Derek Tung for Plaintiff and Respondent.

# INTRODUCTION

Plaintiff and respondent Creation Harmony Trading Inc. (Creation Harmony or plaintiff) entered into a contract with defendant Whitley International Co., Ltd. (Whitley) (the contract) stating in part: "Whitley only owes Creation Harmony $100,000 in principal, interest rate will be calculated as 15% annual interest rate . . . ." Defendant and appellant Xiaoyu Li signed the contract as "Whitley's responsible person." After Whitley allegedly stopped making payments and failed to return the principal amount of $100,000, Creation Harmony sued Whitley and Li for breach of contract, unjust enrichment, and conversion.

After a one-day bench trial, the trial court entered judgment in favor of Creation Harmony in the amount of $88,750, holding Whitley and Li jointly and severally liable. Li appeals the judgment, contending he was not a party to the contract, and thus the court erred in holding him personally liable. Creation Harmony counters that substantial evidence supported the trial court's judgment based on the alter ego doctrine, a theory not specifically pled in the complaint. Because there is no substantial evidence to support an implied alter ego finding, we reverse the judgment insofar as it awards relief against Li.

# FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken from the Settled Statement approved by the trial court. (See Cal. Rules of Court, rule 8.137 [summary of superior court proceedings in lieu of a reporter's transcript].)

"On December 12, 2014, [p]laintiff and [d]efendants allegedly signed an agreement regarding defendants owed plaintiff $330,134 based on automobile purchase [sic]. Defendants allegedly planned to repay the money within one month based on the agreement. Plaintiff contends that [d]efendants made several payments in 2014, 2015, and 2016.

"On August 2, 2016, [p]laintiff contends that [d]efendants signed an arrears summary [the contract] which mentioned that [d]efendants owed [p]laintiff $100,000 with annual interest rate of 15% (1.25% per month), and the interest should start to count after July 22, 2016. Defendants allegedly agreed to pay the principal amount of $100,000 within a year, and defendants paid 9 months interests [sic] until April 22, 2017. However, [p]laintiff contends that [d]efendants stopped payments since then and [d]efendants never returned the principal amount of $100,000.

"Plaintiff extended the payment due since April 22, 2017, however, [p]laintiff contends [d]efendants still failed to make any further payments. Plaintiff sent certified letters with return receipts to demand [d]efendants to [sic] return the balance due with interest on May 1, 2018, but there was no response."

On June 13, 2018, Creation Harmony filed a complaint against Whitley and Li for breach of contract, unjust enrichment, and conversion, seeking damages for failure to pay the money owed under the contract. The complaint alleged Whitley "is, and at all times herein mentioned was, a company doing business in the City of Monterey Park . . . ," and Li is an officer of Whitley.

At trial, Xeming Bi, President of Creation Harmony, testified that Li stated he "would be personally liable for the subject loan given to [Whitley]." He further testified Li signed the contract and "the reason he could not repay the subject debts was because someone else [owed] [Li] money, and he would pay [p]laintiff back once the third-party pays him." The trial court overruled defendants' objections on the grounds of hearsay and relevance.

Ziming Cheng (identified only as a "non-party to the instant suit") testified "he was present when . . . Li stated he would be personally liable for the subject loan and signed the contract for the subject debts."

Creation Harmony offered two exhibits which were admitted into evidence: the contract and text messages between

3

Bi and Li.[1] In the text message exchange, Bi stated in part: "That 100,000 was owed starting September 2014." Li responded: "Yes, Jason owes me about the same amount of money, he has not paid back, not even a penny, so let me discuss with him, and ask him to pay you back directly." Bi responded: "That is between the two of you, I only ask the money from you! Because at the time, we were doing business together, I lent all the money to you."

Li testified he "never verbally stated or agreed to be personally liable for [Whitley's] debt" and he "never signed anything agreeing to be the personal guarantor of [Whitley's] debt to [Creation Harmony]." He further testified he could not pay Creation Harmony "because a third-party did not pay him, therefore he did not have the money to pay Plaintiff." Li also stated he was "doing the car purchasing business both under the company's name and his own name."

The trial court entered judgment in favor of Creation Harmony on all three of its causes of action. The judgment provided that Li and Whitley are jointly and severally liable, and "shall pay back [Creation Harmony's] principal $88,750.00 as total damage." Li appealed from the judgment.

## DISCUSSION

Li contends the trial court erred "to the extent it imposed personal liability against [him]." He argues the trial court erred as a matter of law because the plain language of the contract demonstrates he was not a party to it, and, alternatively, substantial evidence did not support the trial court's finding of personal liability. Creation Harmony does not dispute that it and Whitley are the only parties to the contract. Nor does it argue the contract is ambiguous regarding Li's personal liability. Rather, Creation Harmony's sole counter argument on appeal is

---

1    A court certified translator testified to the accuracy of her translation of the contract and text messages from Chinese to English.

substantial evidence supports the trial court's finding that Li is the alter ego of Whitley.[2]

On review for substantial evidence, our inquiry "begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the determination, and when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court." (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873-874, italics omitted.) "Substantial evidence," however, is not "'synonymous with "any" evidence. It must be reasonable . . . , credible, and of solid value . . . .' [Citation.]" (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1633.) "While substantial evidence may consist of inferences, such inferences must be 'a product of logic and reason' and 'must rest on the evidence' [Citation]; inferences that are the result of mere speculation or conjecture cannot support a finding. [Citations]." (*Ibid.*)

"Ordinarily, a corporation is regarded as a legal entity, separate and distinct from its stockholders, officers and directors, with separate and distinct liabilities and obligations. [Citations.]" (*Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 538 (*Sonora Diamond*).) Under the alter ego doctrine, however, "[a] corporate identity may be disregarded — the 'corporate veil' pierced — where an abuse of the corporate privilege justifies holding the equitable ownership of a

2      Contrary to Creation Harmony's contention, the record does not indicate the trial court made an express finding of alter ego liability. We do, however, apply the doctrine of implied findings, which requires the appellate court to infer the trial court made all factual findings necessary to support the judgment. (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58.) The substantial evidence standard of review applies to both express and implied findings. (See, e.g., *Ermoian v. Desert Hospital* (2007) 152 Cal.App.4th 475, 500-501.)

corporation liable for the actions of the corporation. [Citation.]" (*Ibid.*) "[W]hen the corporate form is used to perpetuate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, the courts will ignore the corporate entity and deem the corporation's acts to be those of the persons or organizations actually controlling the corporation, in most instances the equitable owners. [Citations.] The alter ego doctrine prevents individuals or other corporations from misusing the corporate laws by the device of a sham corporate entity formed for the purpose of committing fraud or other misdeeds. [Citation.]" (*Ibid.*) "Alter ego is an extreme remedy, sparingly used. [Citation.]" (*Id.* at 539.)

"[T]wo conditions must be met before the alter ego doctrine will be invoked. First, there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist. Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone. [Citations.]" (*Sonora Diamond, supra*, 83 Cal.App.4th at p. 538.) Among the factors to be considered in applying the doctrine are "the commingling of funds and other assets; the failure to segregate funds of the individual and the corporation; the unauthorized diversion of corporate funds to other than corporate purposes; the treatment by an individual of corporate assets as his own; . . . the representation by an individual that he is personally liable for corporate debts; the failure to maintain adequate corporate minutes or records; the intermingling of the individual and corporate records; . . . the concealment of the ownership of the corporation; the disregard of formalities and the failure to maintain arm's-length transactions with the corporation; and the attempts to segregate liabilities to the corporation. [Citation.]" (*Mid-Century Ins Co. v. Gardner* (1992) 9 Cal.App.4th 1205, 1213, fn. 3 (*Gardner*).) "No one characteristic governs, but the courts must look at all the

circumstances to determine whether the doctrine should be applied. [Citation.]" (*Sonora Diamond, supra,* 83 Cal.App.4th at p. 538.)

On the limited record before us, we cannot conclude there was substantial evidence to support an implied finding of alter ego. An alter ego theory of liability was not pled in the complaint, and there is nothing before this court that would support an implied finding given the scarce testimonial and documentary evidence, and the detailed findings required to establish alter ego liability. Creation Harmony contends, without citation to the record, that Li failed to segregate his own funds from Whitley's, and treated the assets of the corporation as his own. But the evidence on this point is limited to: (1) Li's statement that he could not pay Creation Harmony because a third party did not pay him, and therefore he did not have the money to pay Creation Harmony; (2) Li did his car purchasing business both under the company's name (Whitley) and his own name; and (3) a text message exchange between Li and Bi in which Li agreed he owed Bi money and stated "Jason owes me about the same amount of money, he has not paid back, not even a penny, so let me discuss with him, and ask him to pay you back directly." We cannot infer from this evidence a disregard of corporate form or commingling of assets. The fact Li was owed money, and that money was going to be used to meet his company's financial obligations, does not support the application of the alter ego doctrine. (See, e.g., *Sonora Diamond, supra*, 83 Cal.App.4th at p. 539 [parent company's contribution of funds to assist subsidiary in meeting financial obligations does not render parent liable for subsidiary's obligations].) Moreover, the record is silent regarding whether Li maintained separate company and personal bank accounts, or whether Li used corporate assets to pay personal expenses. Thus, without more, the facts that Li operated a car purchasing business under both a company name and a personal name, and that Li told Bi he would ask a third party to pay Bi

7

directly, do not warrant an inference of commingling of assets. (See *Kuhn, supra,* 22 Cal.App.4th at p. 1633 ["inferences that are the result of mere speculation or conjecture cannot support a finding. [Citations.]"].)

Next, Creation Harmony argues that a unity of interest was shown by Li's purported oral promise to guarantee the contract. It is true that one factor in finding a unity of interest is a shareholder's representation that he or she will be personally liable for corporate debts. (*Gardner, supra*, 9 Cal.App.4th at p. 1213, fn. 3.) But even if the testimony is credited, there is no indication that Li's representation applied to any other debt of the company. Instead, the testimony possibly demonstrated Li breached a separate oral contract to personally guarantee the contract between Creation Harmony and Whitley. Creation Harmony did not, however, allege breach of the purported oral contract in its complaint; it failed to argue the point in its brief on appeal and, in any event, did not raise this claim at trial according to the Settled Statement. We therefore deem this argument forfeited. (*Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1488, fn. 3 [arguments not raised in the trial court are forfeited on appeal].)

Moreover, even if Creation Harmony could demonstrate a unity of interest between Whitley and Li, it failed to proffer any evidence in support of the second requirement, i.e., an inequitable result. "Difficulty in enforcing a judgment does not alone satisfy this element. [Citation.] There also must be some conduct amounting to bad faith that makes it inequitable for [the individual] to hide behind the corporate form. [Citation.]." (*Leek v. Cooper* (2011) 194 Cal.App.4th 399, 418; see also *Gardner, supra*, 9 Cal.App.4th at p. 1213 ["The purpose of the doctrine is not to protect every unsatisfied creditor, but rather to afford him protection, where some conduct *amounting to bad faith* makes it inequitable, . . . for the equitable owner of a corporation to hide behind its corporate veil. [Citation.]" (Italics in original).] Here,

8

Creation Harmony neither pled bad faith in the complaint (such as allegations of diverting assets of the corporation to avoid paying creditors), nor proffered evidence at trial that Li used the corporate form for any fraudulent or deceptive purpose. Accordingly, the record contains insufficient evidence to support an implied finding that Li was the alter ego of Whitley.

## DISPOSITION

The judgment is reversed insofar as it awards relief against Li, individually. Li is awarded his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

CURREY, J.

We concur:

MANELLA, P.J.

WILLHITE, J.

9