Filed 12/15/22  Wiberg v. Johnson CA6
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JAMES P. WIBERG et al., | H049674 |
| Plaintiffs and Respondents, | (Santa Clara County Super. Ct. No. 19CV347171) |
| v. | |
| GARY J. JOHNSON, | |
| Defendant and Appellant. | |

Defendant Gary Johnson appeals from the denial of his motion under Code of Civil Procedure section 473, subdivision (d)[1] to vacate a default judgment of approximately $1.5 million against him.  Johnson argues that the judgment is void because it exceeded the scope of the complaint against him, as opposed to his company and codefendant, Hydrogen on Demand Professionals LLC (HODP).  Because we consider the complaint sufficient to apprise Johnson of the nature of the plaintiffs' claims and the damages for which his default could make him liable, we affirm the denial of his motion to vacate the default judgment.

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

# I. BACKGROUND

## A. *Complaint*

On April 26, 2019, plaintiffs filed a verified complaint setting forth causes of action for: (1) breach of contract (against HODP); (2) breach of fiduciary duties (against Johnson); (3) failure to provide information (against Johnson); (4) conversion (against HODP and Johnson); (5) declaratory judgment (against HODP and Johnson). Plaintiffs alleged the following in the complaint.

In 2015, Johnson asked Wiberg and Triode Systems, Inc. (Triode) to help him launch his new startup, HODP, as the United States and South American distributor of a Canadian-manufactured hydrogen-on-demand product designed to make diesel engines run more efficiently. Triode is a corporation that provides strategic advice on mergers and acquisitions and assists clients in procuring debt and equity financing. Wiberg is the president and sole shareholder of Triode.

Johnson registered HODP as a Delaware company in March 2015, and also applied to register the company as a foreign LLC with the California Secretary of State. Johnson used his home address in San Jose, California as the LLC address and identified himself as the managing member of HODP. He recruited Johnson and Triode to provide business consulting services in exchange for equity in HODP.

Johnson agreed to give Triode "a non-dilutable 10% Ownership Interest" in HODP and make Wiberg the acting chief financial officer (CFO). On July 24, 2015, HODP, Triode, and Wiberg entered into a Consulting Services and Employment Agreement (the CSE Agreement), which Johnson signed as HODP's "sole Manager and majority member." The CSE Agreement stated that Triode would receive the 10 percent ownership interest in HODP and that, once HODP received "cumulative third-party debt and/or equity financing funds of at least $250,000," Wiberg and Triode would be paid a monthly consulting fee of $12,500 for Wiberg's services as acting CFO. When funds

reached $1 million, the monthly fee would increase to $20,000, and at $3 million in funds, Wiberg would become the full-time CFO with a salary of $360,000 per year.[2]

A second agreement, a July 24, 2015, offer letter (the Offer Letter), described Wiberg's job title, his reporting structure, and his responsibilities. The Offer Letter provided that Wiberg's employment was "at will," but also stated that if his employment was terminated without cause, he would receive "12 months of [his] then-current base salary as a severance benefit." If the cause of termination was "repeated willful failure to perform," the managing member was required to provide 30 days' notice and a "right to cure."

Wiberg provided services to HOPD, but never received any compensation under the CSE Agreement. Over the course of 2016 and 2017, HODP cleared certain testing hurdles and reached an agreement with the United States Navy to put HODP's technology in Navy vessels. As HODP began to achieve success, Johnson began to cut out Wiberg and Triode, by refusing to pay Wiberg a portion of brokerage commissions he was owed under a separate brokerage agreement entered into in April 2015, and withholding monthly financial information about the company. Wiberg needed the financial information to determine whether HODP had received the levels of funding that would entitle Wiberg to salary increases. Johnson later stopped responding to Wiberg's calls and emails and, in March 2018, Wiberg was locked out of the HODP email server.

On March 19, 2018, Wiberg received a "Separation Letter" in which Johnson announced that HODP had elected to "immediately remove" Triode "as a member of the . . . LLC" and to terminate Wiberg as CFO—without 30 days' notice or opportunity to cure—because his "contribution to the company has been nonexistent for nearly two years." Johnson also specified that the equity Wiberg and Triode held in HODP would

_____

[2] In contrast to the allegations of the complaint, Wiberg states in his declaration that the financing level of $3 million would result in a monthly salary of $25,000, which would total $300,000 for the year.

3

be reduced to 2.5 percent instead of the "non-dilutable 10% ownership" interest set forth in the CSE Agreement.

## B.    *Default Judgment*

Johnson was served with the Complaint in May 2019, by substituted service. Johnson and HODP did not answer, and, on plaintiffs' application, the clerk of court entered defaults against Johnson and HODP in July 2019.  In July and August 2019, plaintiffs served written discovery on Johnson and HODP and a deposition notice on Johnson.  Johnson and HODP did not respond to the discovery requests and Johnson did not appear for deposition.[3]

Plaintiffs applied for entry of default judgment asking for $1,053,225.81 in damages in addition to prejudgment interest and attorney fees and costs, as well as certain non-monetary relief.  This initial application was rejected.  Attachment A to the order rejecting the application included questions from the trial judge.  The judge asked plaintiffs to identify where in the complaint they had alleged damages of $1,053,225.81 and alter ego liability.  The judge also asked whether plaintiffs would agree to limit the judgment to $1 million based on the amount set forth in the complaint.

Plaintiffs then filed a supplemental memorandum in which they agreed to limit their principal damages to $1 million, with prejudgment interest calculated from that amount.  Plaintiffs also identified the allegations in the complaint on which they premised Johnson's alter ego liability.  Following the supplemental submission, the court granted the request and entered judgment in September 2020.  It included principal damages of $1 million plus prejudgment interest and attorney fees and costs, for a total of $1,548,794.19.  The court found that plaintiffs had adequately alleged that Johnson and HODP are alter egos, so ordered them to be jointly and severally liable for all amounts owed under the judgment.

---

[3] Johnson's contention that his default foreclosed discovery other than under the procedures applicable to non-parties is not material to our analysis.

## C.     *Post-Judgment Proceedings*

More than eight months after the entry of judgment, Johnson filed a motion to vacate the default judgment pursuant to Code of Civil Procedure section 473, subdivision (d), on the theory that the judgment on its face violated sections 580 and 585. The trial court denied the motion on the ground that the judgment was not void on its face, and that Johnson's motion was therefore untimely under section 473, subdivision (b).

Johnson timely appealed.

## II.     DISCUSSION

Although a defendant seeking relief from a default judgment must typically do so "within a reasonable time, in no case exceeding six months, after the judgment," a trial court may set aside "any void judgment" at any time.  (§ 473, subds. (b) & (d); *Pittman v. Beck Park Apartments Ltd.* (2018) 20 Cal.App.5th 1009, 1020-1021.)  A judgment will be deemed void "only when the invalidity is apparent from an inspection of the judgment roll or court record without consideration of extrinsic evidence." (*Id*. at p. 1021)  As is pertinent here, "[a] default judgment is void . . . if the complaint failed to 'apprise[] the defendant of the nature of the plaintiff's demand,' or if the court granted relief which it had no power to grant including a default judgment which exceeds the amount demanded in the complaint." (*Falahati v. Kondo* (2005) 127 Cal.App.4th 823, 830, fns. omitted (*Falahati*).)  But "a default judgment is not necessarily void just because it is based on a complaint which fails to state a cause of action." (*Ibid*., fn. omitted.)  We review de novo a trial court's determination whether a judgment is void.  (*Ramos v. Homeward Residential, Inc.* (2014) 223 Cal.App.4th 1434, 1440-1441.)

Johnson contends the judgment here is void because the complaint gave him insufficient notice of his potential liability under an alter ego theory for damages of $1 million on plaintiffs' breach of contract cause of action.  Although Johnson identifies potential deficiencies in the complaint which might have supported a demurrer had he

5

elected to timely respond, we consider the complaint sufficient to apprise him of the nature of the claims against him and the damages for which he was potentially liable.

"It is fundamental to the concept of due process that a defendant be given notice of the existence of a lawsuit and notice of the specific relief which is sought in the complaint served upon him. The logic underlying this principle is simple: a defendant who has been served with a lawsuit has the right, in view of the relief which the complainant is seeking from him, to decide not to appear and defend. However, a defendant is not in a position to make such a decision if he or she has not been given full notice." (*In re Marriage of Lippel* (1990) 51 Cal.3d 1160, 1166.) "California law provides that where a plaintiff seeks to recover money or damages, the amount sought generally must be stated in the complaint." (*Van Sickle v. Gilbert* (2011) 196 Cal.App.4th 1495, 1520.)

Plaintiffs by their causes of action for breach of fiduciary duty and conversion pleaded only damages "in an amount not yet fully determined." In their breach of contract cause of action, on the other hand, plaintiffs specifically included an allegation of damages in excess of $1 million, matching the damages requested in the prayer. As Johnson notes, the allegations of the breach of contract cause of action do not explicitly state that plaintiffs assert this cause of action against him personally or that plaintiffs are pursuing an "alter ego claim" against him; in Johnson's view, these omissions defeat any inference that he was on notice of potential joint and several liability with HOPD for breach of contract.

"Alter ego," however, is not a cause of action, and a plaintiff need not plead the words "alter ego" in a complaint to recover from an individual as the alter ego of a corporate entity. (*Favila v. Pasquarella* (2021) 65 Cal.App.5th 934, 946.) "A claim against a defendant, based on the alter ego theory, is not itself a claim for substantive relief, e.g., breach of contract or to set aside a fraudulent conveyance, but rather, procedural, i.e., to disregard the corporate entity as a distinct defendant and to hold the

6

alter ego individuals liable on the obligations of the corporation where the corporate form is being used by the individuals to escape personal liability, sanction a fraud, or promote injustice." (*Hennessey's Tavern, Inc. v. American Air Filter Co.* (1988) 204 Cal.App.3d 1351, 1359; see also *Leek v. Cooper* (2011) 194 Cal.App.4th 399, 415 (*Leek*).) Rather, a plaintiff "must allege sufficient facts to show a unity of interest and ownership, and an unjust result if the corporation is treated as the sole actor." (*Leek*, *supra*, 194 Cal.App.4th at p. 415.)

Liability under an alter ego theory turns on " 'a host of factors,' " including but not limited to " '[c]ommingling of funds and other assets, . . . and the unauthorized diversion of corporate funds or assets to other than corporate uses . . .; the treatment by an individual of the assets of the corporation as his own . . . ; the use of the same office or business location; the employment of the same employees and/or attorney . . . ; the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation.' " ' " (*Zoran Corp. v. Chen* (2010) 185 Cal.App.4th 799, 811.) " ' No single factor is determinative, and instead a court must examine all the circumstances to determine whether to apply the doctrine. [Citation.]' [Citation.]" (*Id.* at p. 812.)

Plaintiffs contend they have alleged facts that the trial court could justifiably have relied on to make an alter ego finding. Plaintiffs allege Johnson is the managing member as well as the "sole Manager and majority member" of HODP and that he gave his home address as the "LLC Address." Plaintiffs allege further that Johnson took advantage of his position as managing member "to enrich himself at the expense of other members" by "using [HODP's] funds and income to pay personal expenses" and "by failing to comply with his bookkeeping obligations." These allegations do support several of the alter ego factors: (1) commingling of funds and the unauthorized diversion of corporate funds to other than corporate uses; (2) the treatment by Johnson of the assets of HODP as his own;

7

(3) the diversion of assets from HODP to Johnson; and (4) the use of the same office or business location by Johnson and HODP.

It is true that these alter ego allegations are sparse. We are unable to rule out the possibility that, had Johnson elected to timely challenge the pleading by demurrer, plaintiffs might have been obliged to amend the complaint. But in the instant procedural context, we are not concerned with whether the alter ego allegations would have been sufficient to withstand a demurrer. (See *Falahati*, *supra*, 127 Cal.App.4th at p. 830; cf. *Molen v. Friedman* (1998) 64 Cal.App.4th 1149, 1157 ["If the complaint in the default action is sufficient to apprise [the defendant] of the nature of [the plaintiffs'] demand, it is immaterial that it might have been subject to a demurrer for failure to make an allegation necessary to state a cause of action"]; see also *Christerson v. French* (1919) 180 Cal. 523, 525 ["It is well established that a judgment is not void if the court has jurisdiction of the parties and of the subject-matter, irrespective of whether the complaint states a cause of action or not, so long as it apprises the defendant of the nature of the plaintiff's demand."] The issue here is not whether plaintiffs have properly stated a breach of contract cause of action against Johnson based on alter ego, but whether the complaint gave Johnson sufficient notice of his potential liability to insulate the default judgment from an otherwise untimely motion to vacate.

The allegations in the body of the complaint included at least some facts matching several of the alter ego factors, and the prayer for relief specified that plaintiffs sought a judgment that HODP *and Johnson* breached the subject agreements, requesting damages against both "in excess of $1 million." Plaintiffs' specific request in the prayer was sufficient to put Johnson on notice of his potential total liability, including the possibility that he could be liable for breach of contract. Given that the breach of contract cause of action was not alleged against Johnson directly, the combination of the request in the prayer and the factual allegations—from which even Johnson concedes one could infer

8

the possibility of alter ego liability—should have alerted him that plaintiffs sought to hold him liable under an alter ego theory.[4]

For the contrary proposition, Johnson in reply relies on *Weber v. Superior Court of Yolo County* (1945) 26 Cal.2d 144, 148 (*Weber*), where the Supreme Court stated that "[i]f a plaintiff prays for relief beyond the obvious purpose of the complaint and not warranted by the facts alleged, the prayer may be disregarded." But *Weber* is distinguishable as a matter of both process and fact. As a procedural matter, the Supreme Court in *Weber* had no occasion to address the adequacy of notice supplied by the pleading for purposes of a defendant's election to default; rather, it addressed whether petitioner's commencement of an action to establish receivership of farmland constituted contempt of an order staying the petitioners' foreclosure sale of the same land. (*Id.* at pp. 146-147.) As a factual matter, in *Weber*, "the obvious purpose" of the operative pleading was to establish a receivership on the ground that petitioner—under the stay— was "powerless and prevented from selling said property under said deed of trust," even though "the prayer, in addition to requesting an accounting and receivership, did ask for such foreclosure and sale." (*Id.* at pp. 147-148.) Here, on the other hand, plaintiffs' "obvious purpose" is to recover damages for breach of contract by HODP, an entity controlled by Johnson, based at his personal residence, for his personal benefit. We are accordingly unable to find that plaintiffs here prayed for relief either beyond the obvious purpose of the complaint or unwarranted on the facts alleged.

### III.   DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal.

---

[4] Johnson in his motion to vacate the default judgment before the trial court acknowledged that "the Complaint states evidentiary facts which infer the possibility of an alter ego claim" but objected that the complaint did not "state the cause of action." As we have discussed, alter ego liability is not a "cause of action."

9

_____

LIE, J.

WE CONCUR:

_____

GREENWOOD, P.J.

_____

GROVER, J.

*Wiberg et al. v. Johnson*
H049674